GIBSON AND YOUNG, TRUSTEES, *v.* EURETTA E. DAVENPORT.

G. and Y. placed money in the hands of their agents, to be loaned upon "first mortgage" on unincumbered real estate, with instructions to act and rely upon the certificate of C. as to the title of the property to be mortgaged, the commission of the agents and the charges of C. to be paid by the borrower. D., desiring a loan of $10,000, upon real estate of her's which was incumbered by a mortgage of $6,000, to be used in paying off the mortgage, and for other purposes, and having learned through C. that such a loan could be obtained from G. and Y., submitted her title papers to C., who, finding them sufficient, prepared a mortgage and notes to be executed by D. in a form prescribed by the agents of G. and Y., and and they were accordingly executed in the presence of C., but in the absence of the agents of G. and Y. When the papers were so executed, C., with D.'s assent, took them away and delivered them to the agents of G. and Y., unaccompanied by any certificate of title. The agents thereupon, and with knowledge of the existence of the outstanding mortgage, returned D.'s mortgage to C. for record, and gave C. a check payable to his own order for the entire proceeds of the loan, $9,600. C. took the check and mortgage away, and shortly afterward returned and delivered to the agents the required certificate of title, in which he certified that the property "is now unincumbered." C. had the mortgage of D. recorded, but he paid no part of the money upon the old mortgage, paid only $3,000 of it to D., and embezzled the remainder.

*Held:* That C., in receiving the $9,600, was not to be regarded as the agent of D., and that D. should only be charged upon her notes and mortgage. with the $3,000 actually received by her, with interest.

Motion for leave to file a petition in error to the District Court of Hamilton county.

The original action was brought by Benjamin F. Stone against Euretta E. Davenport, to foreclose a mortgage for some $6,000, executed by her to Stone upon real estate situate in Cincinnati. The plaintiffs in error, Gibson and Young, who held a junior mortgage, executed by Mrs. Davenport to them upon the same property, were made co-defendants with her. The validity and amount due upon Stone's mortgage were not disputed, and the only controversy in the case was as to the amount equitably due upon the junior mortgage. This mortgage and the notes of Mrs. Davenport which it purports to secure, are for the sum of $10,000, which sum, with interest from the date of the mortgage, is claimed by Gibson and Young to be due; while Mrs. Davenport claims that only $3,000, with interest from the date of the mortgage, is due. The mortgage bears date October 15, 1875, and the facts in relation to its execution are substantially these:

Gibson and Young resided in Philadelphia, and, as trustees of certain parties there, had money to be loaned on mortgage security; and McBurney & Co., of Cincinnati, were their agents to negotiate for its investment. Their instructions were to loan the money on "first mortgages only," and their terms were "eight per cent. interest, the borrower to pay or be charged with the commission of McBurney & Co., and the charges for abstracting and certifying titles." Several persons, and among them Mr. Cist, of Cincinnati, were selected by Gibson and Young as reliable abstractors of title, and McBurney & Co. were instructed to act and rely upon certificates of title made by either of them, and to make no loan without such a certificate.

Mrs. Davenport resided in the vicinity of Cincinnati, and

F., an attorney of Cincinnati, was employed by her to procure a loan of $10,000 on mortgage upon her property aforesaid, to be applied in paying off the Stone mortgage, and to other purposes. F., who had lately negotiated and obtained a loan for other parties from Gibson and Young, in which transaction Cist had acted as abstractor of title, and had received from Gibson and Young the money loaned, and paid it over to F., inquired of Cist if the loan of $10,000 could be obtained for Mrs. Davenport. Cist, after consulting McBurney & Co., replied that it could, and gave the terms and conditions, stating that the Stone mortgage must be discharged out of the money, as the loan must be upon first mortgage, and that McBurney & Co., who, it seems, knew of the Stone mortgage, would only make the loan upon that condition. Cist then prepared the notes and mortgage to be executed by Mrs. Davenport, in a form which had been prescribed to him by McBurney & Co., and upon a day appointed for the purpose Mrs. Davenport, Cist, and F., were to meet at the office of F. to have the papers executed. The parties accordingly met, and the papers were executed, F. signing the mortgage notes as surety for Mrs. Davenport. No member of the firm of McBurney & Co. was present at the interview. When the papers were executed Cist took them away, without any objection from Mrs. Davenport or F., and carried them to McBurney & Co., who received them, and gave to Cist a bank-check, *payable to Cist*, for the full amount of the $10,000, less the commissions and charges, and handed him the mortgage to be recorded. At this time Cist had examined the title to the property, and had reported it good, but had not furnished to McBurney & Co. a certificate to that effect, which, it seems, they required. Cist took the mortgage and the check away, and after a short time returned with the required certificate, in which he certifies that he " finds the title to said premises *now* good in Euretta E. Davenport, and *entirely unincumbered.*" Cist then took the mortgage to the recorder's office for record, and deposited the check in bank *to his own credit*, and, returning to F.'s office, gave

him a check for $3,000, saying that that sum was all he had received of McBurney & Co., and that the balance of the net amount of the loan would be paid by them in a few days. Nothing was said directly about the payment of the Stone mortgage by or to Cist, either at this last interview with McBurney & Co., or at the time he paid the $3,000 to F. It seems that both McBurney & Co. and F. took it for granted that the Stone mortgage was to be paid out of the money loaned. Stone's attorneys, who had his mortgage for collection, were near by, and ready and expecting to receive the money. Cist subsequently absconded without paying any part of the balance of the money either to F. or upon the Stone mortgage, and the $3,000 is all that was actually received by Mrs. Davenport upon the loan.

Upon these facts it was held by the district court, into which the cause came by appeal, that the loss occasioned by the defalcation of Cist should fall upon Gibson and Young, and rendered a decree accordingly. Gibson and Young now seek to reverse this judgment of the district court.

*Sage & Hinkle*, for the motion, on the question of Cist's agency for Gibson and Young, cited 44 Ill. 437; 1 Parson on Contracts, 48; *Whitlock* v. *Waltham*, 1 Salk. 157; *Clark* v. *McGraw*, 14 Mich. 139; *Haines* v. *Pahlman*, 35 N. J. Eq. 183; *Williams* v. *Walker*, 2 Sandf. Ch. 325; 34 Ill. 68; 6 Serg. & Rawle, 145; 30 Penn. 513.

If Cist was not in fact the agent of either party, but by falsely representing himself to Follett as Gibson and Young's agent, and to McBurney as Follett's agent, he deceived and defrauded both. Who then is to bear the loss, is answered in *Shrall* v. *Klinker*, 15 Ohio, 155; Story's Eq., sec. 150.

*Follett & Cochrane*, contra, on the question of agency, cited Wharton on Agency, secs. 65, 67, 74, 128, 614, 713, 714; *Barring* v. *Corrie*, 2 B. & Ald. 137; *Higgins* v. *Moore*, 34 N. Y. 417; *Doubleday* v. *Kress*, 50 N. Y. 410; 24 Mich. 36; *Austin* v. *Thorpe*, 30 Iowa 376; *R. R. Co.* v. *Roberts*, 4 Pa. 110; 4 La. Ann. 526; Smith's Mercantile Law, 59;

:Story's Agency, sec. 126; *Bell* v. *Cunningham*, 3 Pet. 69; ·*Owings* v. *Hull*, 9 Pet. 607; 3 Stockt. 201.

WELCH, C. J. We think the district court was right. The money in controversy was not received by Mrs. Davenport, and she never authorized Cist to receive it for her. There is nothing to show that she reposed any confidence in Cist. He was selected by Gibson and Young, and not by her. They trusted to his honesty to report truly upon ·titles. Through their agents, McBurney & Co., they trusted him to prepare the papers, and to act for and represent ·them at their execution. They trusted him with the whole sum loaned, and with the mortgage to be recorded. It is but fair to presume that they trusted him to apply this money as had been agreed upon by the parties, by paying .so much of it to the attorneys of Stone as would satisfy his mortgage, and paying the balance, less his fees, to Mrs. Davenport, or to F. as her attorney. It can hardly be believed that McBurney & Co. would have consented to pay ·the whole sum over to Mrs. Davenport, and trust to her or to her attorney to make the proper application of it, or that they supposed they were so consenting when they paid the money to Cist, drawing the check in his own name, and apparently leaving it entirely to him to ascertain the amount payable on the mortgage, and the amount to be received by Mrs. Davenport. I think it is fairly to be inferred from the evidence, that McBurney & Co. supposed, .at the time Cist brought them the certificate of title, that he had already applied so much of the money as was necessary to the discharge of the Stone mortgage. They knew ·of the existence of that mortgage, and that they would violate their instructions if they made the loan without its cancellation, and with this knowledge they accepted from Cist, after they had given him the check, his certificate that the property was " now unincumbered." Under such ·circumstances, no presumption of authority on the part of Cist to receieve the money, as agent for Mrs. Davenport,

can arise from the mere fact that he was entrusted with the notes and mortgage. As well might it be said that her delivery of the same notes and mortgage to McBurney & Co. would have made *them* her agents to receive the money from Gibson and Young. The same may be said of the fact that Mrs. Davenport was to pay the charges of Cist, for by the terms of the loan she was also to pay the commission of McBurney & Co. Both facts are equally reconcilable with the supposition of Cist being the agent of either party. We think both parties regarded him, in this transaction, as the agent of the lenders, and not of the borrower, and that the former, and not the latter, should bear the loss occasioned by his unfaithfulness.

<div align="right">

*Motion overruled.*