# Richmond.

## KIRKPATRICK & HOWARD, TRUSTEES, v. WARDEN.

### January 13, 1916.

1. PRINCIPAL AND AGENT—*Disputed Agency—Case in Judgment.*—W. applied to K. & H. for a loan to be secured by deed of trust on real estate. K. & H. agreed to make the loan if the title was satisfactory, and wrote W. advising her to get J. or some other reliable attorney to examine the title for her. She employed J. to examine the title, and he reported two liens on the land and this report was sent to K. & H. by the agent of W. Two days thereafter K. & H. wrote to J. enclosing a check for the amount of the loan payable to W., and also a deed of trust to be executed by her—the check to be delivered when the deed of trust was executed. In the same letter to J. enclosing the check he was asked to have the property insured for the amount of the loan and to certify that the two liens mentioned in his abstract of title had been paid. K. & H. also said in the same letter they had been informed that the property was worth a sum mentioned and he was asked, "Is that your judgment of it?" At first W. refused to endorse the check, but did finally execute a note for the amount and the deed of trust to secure it and endorsed the check. All of these papers were delivered to J., who endorsed the check and collected it, and a few days thereafter died insolvent. Suit was brought to annul the deed of trust securing the loan to K. & H. on the ground that J. was the agent of K. & H. and hence the deed of trust was without consideration. *Held:* J. was the agent of W. and the loss must fall on her, and the deed of trust is a valid security for the loan made by K. & H.

Appeal from a decree of the Circuit Court of Montgomery county. Decree for the complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*John S. Draper* and *M. H. Tompkins,* for the appellants.

*R. L. Jordan* and *H. C. Tyler,* for the appellee.

BY THE COURT:

The appellee, Magnolia Warden, applied to Kirkpatrick & Howard, a law firm in Lynchburg which does a large brokerage business, for a loan of $1,000 on her farm in Montgomery county. This application was made in writing through R. J. Noel, Miss Warden's neighbor, who wrote to Kirkpatrick & Howard at the request of T. B. Williams, her brother-in-law. The firm replied by letter, stating that they would charge a fee of $30.00 for negotiating the loan, and requesting Mr. Noel to secure the statements of one or two responsible parties in the neighborhood as to the value of the property, suggesting that the small fee would not justify them in going there to make a personal examination of the farm. The letter contained this further statement: "We would want an abstract of title to this property prepared by some good attorney in Christiansburg, Capt. Johnson or some other man of recognized standing at the bar. We would then prepare a deed of trust, send it on for Miss Warden's signature and would pay the money upon the recordation of the deed."

The letter from Noel to Kirkpatrick & Howard is dated June 30, 1911, and their reply was dated two days later. Miss Warden employed and paid Capt. Johnson to make the abstract, and on November 28, 1911, Williams wrote Kirkpatrick & Howard a letter, enclosing the abstract, explaining that the delay had been due to his sickness, and urging immediate action upon the application. The abstract disclosed certain liens on the property. Kirkpatrick & Howard, immediately on receipt of the abstract, prepared a deed of trust and a bond for $1,000 for Miss Warden to execute, and a check for $970.00 (balance of the loan after deducting their fee of $30.00), which check was payable to her order. These papers were all sent to Capt. Johnson, with a letter from Kirkpatrick & Howard, dated November 30, 1911, which read as follows: "We enclose you the papers to close up the Magnolia Warden

loan. Have the property insured for $1,000.00, payable to our order under the mortgage clause. Also have Miss Warden endorse the bond. R. J. Noel told us this place was worth $2,500,00. Is that your judgment of it? Please certify that the lien to H. C. Tyler, trustee, and the judgment reported in your abstract, have both been paid." On the same date, November 30, 1911, they wrote to T. B. Williams as follows: "We have sent the paper closing the Magnolia Warden loan to Capt. Jno. R. Johnson." Upon receipt of these papers Capt. Johnson wrote, under date of December 4, 1911, to T. B. Williams the following letter: "Kirkpatrick & Howard have sent me their check for $970.00, in full of the loan for $1,000.00 which you have negotiated with them. The papers are made out to be executed by Miss Magnolia Warden and it will be necessary for her to come here to do so. It will be convenient for me to see her at any time."

After the receipt of the above papers by Capt. Johnson, and the correspondence above set out, it appears that the following is, in substance, the course of the subsequent material events: Noel took the check to Miss Warden to obtain from her an endorsement of the same to the order of Capt. Johnson. She positively declined to endorse the check. Williams then saw Capt. Johnson, who gave him an order to Noel to deliver the check to him, so that he could procure Miss Warden's endorsement. Williams thereupon obtained the check and took it, along with the deed of trust and the bond, to Miss Warden and attached her name to all of these papers with her consent, but she protested against signing the papers and turning them over to Williams or anyone else until she was secured as to the proceeds of the check. Williams says he told her "that until Capt. Johnson had made the distribution of this money that he had been ordered to do by Kirkpatrick & Howard," that he, Williams, "would consider the papers null and void and of no effect," and he took them back to Capt. Johnson's office. Williams, it is to be observed, was the agent

of Miss Warden throughout these transactions, as well as her brother-in-law, and the husband of the Mrs. Williams whose deed from Miss Warden for the property embraced in the deed of trust is sought to be cancelled as one of the objects of this litigation.

Capt. Johnson failed to account for the money and died shortly afterwards, leaving no estate, and the question to be determined on this appeal is whether the loss must fall on Kirkpatrick & Howard, trustees, or on Miss Warden.

We think it is clear that Miss Warden must bear the loss. She employed and paid Capt. Johnson to make the abstract. The mere fact that his name was suggested in the original letter from Kirkpatrick & Howard is not, in our opinion, of any importance. The case in this respect is not different from what it would have been if the letter had merely suggested that the abstract must be furnished by some reputable lawyer in Christiansburg without mentioning any name. This result is manifest from the letter itself, and is admitted by Williams, who testified that he "had the choice of the whole bar at Christiansburg," and that he "selected Capt. Johnson." Counsel for appellees lay stress upon the fact that in the letter to Johnson, enclosing the papers to close the transaction, Kirkpatrick & Howard instructed him to insure the property and have the bond endorsed (it was payable to her own order), and requested him to certify that the liens shown in his abstract had been paid; but it must be remembered, first, that the check was payable to Miss Warden's order, and, second, that these instructions to Capt. Johnson related only to matters which the stipulations and covenants in the deed of trust executed by her expressly obligated her to become responsible for, namely, the insurance on the property and the sufficiency of the title. This was clearly her primary duty, and we find nothing at all in the record indicating that Kirkpatrick & Howard at any time did anything by which they assumed to attend to this duty for her. It is also pointed out by counsel for appellees

that the letter in question contained an inquiry as to the value of the property, but a glance at the letter will show that this inquiry merely sought cumulative and subsequent information which was in no way made a condition of the loan.

We do not rest the decision of this case merely upon the original employment of Capt. Johnson by Miss Warden, and we do not mean to say that it could, with the same result, be rested solely thereon; but considering that fact along with the covenants in her deed, and the important fact that the check was payable to her order, we can see no escape from the conclusion that the loss must be placed upon her, if not by the rules of representation and agency, certainly upon the principle that it was she and not Kirkpatrick & Howard who made the loss possible. The check, being made payable to her order, was as absolutely subject to her control as was the execution and delivery of the deed of trust and the bond, all of which she simultaneously turned over to her representative, Williams. His construction and advice to her as to the effect which the return of these papers, fully executed, to Capt. Johnson would have, cannot bind the trustees. Capt. Johnson could not use the check without her endorsement, and what she did in regard thereto was equivalent to cashing the check herself and turning the money over to him. If Kirkpatrick & Howard had intended Capt. Johnson to pay the money out as their attorney, they would have made the check payable to him. They did not entrust him with the money, and the power to use the proceeds of the check was conferred upon him by Miss Warden. If, therefore, he can be regarded in any sense as the agent of Kirkpatrick & Howard, he certainly cannot be regarded as their agent to receive the money. This power to collect the check was conferred solely by her at the same time that she entrusted him with the executed mortgage and bond. At the time of the misappropriation he certainly had her money and not the money of Kirkpatrick & Howard. It seems to us that this proposition is not less true than it would have been if she

herself had taken the check to the bank, cashed it and turned the proceeds over to him. Counsel for the appellees state in their brief, thus agreeing in this respect with the position of counsel for the appellants, that the controlling question in this case is: "Whose agent was J. R. Johnson at the time of the misappropriation of the funds?" We think it follows, from the facts and considerations stated above, that he was handling money which Miss Warden had delivered to him and was, therefore, certainly her agent in respect thereto; and this conclusion appears to be supported by authority. See *Henken* v. *Schwicher,* 174 N. Y. 298, 66 N. E. 971; *Trustee, &c., of Presbyterian Church* v. *Livington,* 210 Pa. 536, 60 Atl. Rep. 154; *Pepper* v. *Cairns,* 133 Pa. 114, 19 Atl. 336, 7 L. R. A. 750, 19 Am. St. Rep. 625; *Land Mortgage Co.* v. *Preston,* 119 Ala. 290, 24 So. Rep. 707; *Murphy* v. *Becher,* 101 Minn. 329, 112 N. W. 264. Without going into any review or discussion of these authorities, it is sufficient to say that they fully support the conclusion above expressed.

The decree appealed from was entered in a chancery suit brought to set aside, as fraudulent and voluntary, a deed from Miss Warden to her sister, Mrs. Williams, and also to set aside, for want of consideration, the deed of trust to Kirkpatrick & Howard, trustees. The circuit court held that the evidence was insufficient to sustain the allegations of the bill as to the deed from Miss Warden to Mrs. Williams and sustained that transaction, but further held that the deed of trust was invalid and should be set aside, and accordingly so. decreed, awarding all the costs of the cause against Kirkpatrick & Howard. We are of opinion that the decree, in so far as the trustees are concerned, was erroneous. It will be reversed and the bill dismissed as to them, and a decree will be entered in this court to that affect, and awarding them their costs both in this court and in the court below.

*Reversed.*