COMMONWEALTH FARM LOAN COMPANY *v.* WALL.

Opinion delivered February 14, 1916.

PRINCIPAL AND AGENT—AGENCY TO NEGOTIATE LOAN.—Appellee, whose property was subject to a mortgage, desired to procure a loan from appellant, which appellant agreed to make, it being agreed that the existing mortgage be paid off out of the proceeds of the mortgage to appellant. Appellant sent the money to its local correspondent at the place of appellee's residence, with instructions, but the local correspondent appropriated the money to his own use, without applying the money as directed. *Held*, in determining as between appellant and appellee as to whose agent the intermediary was, and upon whom the loss would fall, the controlling question is one of fact; for whom was the agent or intermediary acting in the particular transaction; and *held*, further in this particular case, that the intermediary was the agent of, and acting for appellant, that the duty to satisfy the existing mortgage was within the apparent, if not the actual scope of his authority, and that appellant, who held him out as his agent, must sustain the loss.

Appeal from Poinsett Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*Mayo & Maddox,* for appellant.

1.  Leatherwood was the agent of the appellee, Wall in the matter of the payment of the prior liens on the lands, and he is bound by his acts. 31 Cyc., p. 1222. He acted for Wall after the draft was endorsed by him and delivered to Leatherwood as his agent for the purpose of discharging the liens. 31 Cyc. 1225, note; 67 Ark. 159; 53 S. W. 888.

2.  One dealing with an agent is bound to ascertain the nature and extent of his authority, and has no right to trust to the mere presumption of authority, nor to the assumption thereof by the agent. 92 Ark. 315; 94 *Id.* 301; 126 S. W. 832. A principal is not bound by the acts or declarations of an agent beyond the scope of his authority. 92 Ark. 315; 122 S. W. 992; 100 Ark. 360; 8 *Id.* 227. Here there was no ratification by the loan company of the unauthorized act. 74 Ark. 557; 11 *Id.* 189; 64 *Id.* 217; 41 S. W. 852.

*Lamb, Caraway & Wheatley*, for appellee.

1.    Leatherwood was the agent of the loan company and it must bear the loss. 31 Cyc. 1222, 1225; 54 Ark. 40; 58 N. W. 100; 53 N. W. 148; 62 *Id.* 753; 144 *Id.* 1077; 27 Pac. 807; 46 N. E. 589; 53 N. W. 179; 101 Fed. 490; 100 Ark. 360-363.

2.    The principal is bound by the acts of the agent exercising such authority as a third person is justified in believing the agent to have. 103 Ark. 79, 85; 100 *Id.* 240.

SMITH, J.    Appellant is engaged in the business of making farm loans and had as a local correspondent, or agent, at Marked Tree, Arkansas, one Paul Leatherwood. On February 20, 1913, appellee made application, through Leatherwood, for a loan of $1,200, and submitted an abstract of the title to his property, which showed the existence of two liens, one in favor of the Chapman & Dewey Land Company, and the other in favor of the Marked Tree Bank & Trust Company. Leatherwood had formerly been the cashier of this bank. Notes for the amount of the loan and the mortgage securing the same, were executed by appellee on March 7, and after the mortgage had been duly recorded it was sent, with the notes, to appellant. Leatherwood drew a common customer's draft on the appellant for the amount of the loan, made payable to himself, but the payment was refused by appellant on presentation. Thereafter a draft was drawn on one of the company's forms, executed by appellee and payable to his own order and endorsed by him and delivered to Leatherwood to pay off the prior liens. This draft was then endorsed by Leatherwood and was paid upon presentation, and the proceeds thereof placed to the credit of Leatherwood with the Marked Tree Bank. Leatherwood checked out the money for other purposes and the prior liens were never discharged.

Appellee instituted suit praying that the notes and mortgage in appellant's favor be cancelled on the ground that no consideration therefor had ever passed, or that he have judgment against appellant for the amount of said loan. There was an answer and cross-complaint in

which a foreclosure was asked on acount of appellee's failure to discharge the prior liens and to pay interest. Upon the trial a decree was rendered cancelling said mortgage and notes, and this appeal has been prosecuted from that decree.

The parties to this litigation agree that the controlling question in this case is the one of fact: Whose agent was Leatherwood in the matter of the payment of the prior liens on the land offered as security for the loan?

In the application for the loan Leatherwood was referred to as "your (appellant's) local agent," and he was referred to by appellant's officers, who testified, as their "local correspondent," but no attempt was made to differentiate between an agent and a correspondent.

The officers of the appellant company knew, of course, of the outstanding liens and that it was anticipated that the loan would be used in part in their satisfaction and that according to their contract these items were to be discharged before the loan was completed. Appellant company knew, when it paid the draft, that Leatherwood was the last endorser and in the usual course of business the money would pass through his hands. There is nothing about the transaction to indicate any purpose on appellant's part to pay appellee the entire amount of the loan and then trust to his honesty to properly apply the money. Leatherwood testified that he had procured numerous loans from appellant company and that his fees or commissions were always paid by it and never by the borrower, and that his instructions in all cases were to secure a release and satisfaction of all prior liens, and that in making these loans it was generally necessary to satisfy some prior lien, and that his custom was to deposit the draft in the local bank and to pay off the prior indebtedness by checks on the bank. He further testified that it was his duty to see that the papers were properly executed and that he was required to submit a report on the loan, in which he gave his opinion on the appellant's character and credit and also his opinion on the

desirability of the loan. The applicant knew nothing of this report and was not supposed to see it.

The evidence on appellant's behalf was to the effect that it had no local agents, but only local correspondents, and that the duty of these correspondents was confined to submitting applications for loans.

The cashier of the bank testified that Leatherwood had negotiated a number of loans and that his custom was to attach the mortgage to a draft drawn on appellant for the amount of the loan, and deposit the draft for collection to his credit, and out of the proceeds of the draft to pay off the prior liens and any balance to the borrower.

Appellant lays stress on the recital in the application that all liens will be discharged, and insists that in undertaking to do this Leatherwood was the agent of the borrower. But this is the very point in issue. The agreement was not that appellee would discharge the liens but that there are no liens which would not be removed before the loan was completed.

Discussing a similar question the Supreme Court of Iowa said:

"As to McLean's agreement to pay off the prior mortgage, it is clear from all of the facts and circumstances that that amounted to no more than a consent on McLean's part that so much of the money loaned as was needed for that purpose should be applied in satisfaction of the existing incumbrance upon his land. We do not deem that statement in the application as of controlling importance in determining the main question as to whether or not, in receiving the money, Coleman was acting for McLean." *McLean* v. *Ficke,* 62 N. W. 753.

In 31 Cyc., p. 1222, in a discussion of the principle which must control the decision of this case, it was said:

"In the negotiation of loans it is often difficult to determine whether an intermediary is the agent of the borrower or of the lender. Each case must be decided upon its own particular circumstances. If a person desiring a loan makes known that desire to one who applies to a money lender and consummates the loan, the inter-

mediary is the agent of the borrower, not of the lender. So if the borrower in a written application or otherwise expressly makes the intermediary his agent, if he pays the agent's commission for negotiating the loan, or if he employs the intermediary to examine the title to the property offered as security or to discharge prior encumbrances thereon, these facts, taken collectively or in various lesser combinations, justify an inference that the intermediary is the agent of the borrower. On the other hand if a money lender employs the intermediary to negotiate loans, to examine the title to property offered as security, to see that the property is discharged from prior encumbrances, to prepare the papers and see to the execution thereof, to pay over the money to the borrower, or to perform other services in regard to the loan, these facts, taken collectively or in various lesser combinations, justify an inference that the intermediary is the agent of the lender. If the lender pays the intermediary's commission, it tends to establish an agency in the lender's behalf; and if the service is performed at the request and by the direction of the lender, presumptively the agent is his agent, even though the borrower is required to pay for the service. However, none of the foregoing facts is conclusive on the question of agency, and will not preclude the alleged principal from showing that the intermediary was actually acting as the agent of the other party, or as agent of each, but for different purposes. And the fact that the application for the loan recites that the intermediary is the agent of the borrower is not controlling, if the facts and circumstances are such as to create an agency in behalf of the lender as a matter of law."

To this text there is the following note:

"Whether a loan agent who retains part of the money loaned until prior encumbrances are discharged acts in so doing as agent of the lender or of the borrower is in dispute. Certainly he may be so employed by the borrower. But when the agent is directed to retain a portion of the loan until the prior encumbrance is discharged, it would seem that he does so for the lender, who alone is inter-

ested in having the discharge before he parts with his money. Otherwise the retention of the money seems without meaning, for if the agent acts for the borrower then his possession is the possession of his principal, and the latter may demand that the money be paid him without discharging prior claims against the property, and such is the holding of many cases. (Citing cases). But there are other cases that hold that the discharging of the prior encumbrance is the duty of the owner of the property, and hence in attending to such discharge the agent acts for him. (Citing cases)."

Numerous cases are cited in support of these conflicting views. We will not undertake to review these cases, but it is sufficient to say that all of them recognize that the controlling question is the one of fact: For whom was the agent acting in the particular transaction? When that test is applied here we are constrained to hold that Leatherwood was appellant's agent in the satisfaction of the prior liens.

It is finally insisted that the proof on appellant's part is to the effect that if it be said that Leatherwood was its agent, his agency was limited and that his act in undertaking to satisfy the prior liens was beyond the apparent scope of his authority insofar as his agency for appellant was concerned. But we can not accept this view. In the case of *American Sales Book Co.* v. *Whitaker,* 100 Ark. 360, it was said (to quote the syllabus):

"Where an agency is proved without showing its extent, the agent is presumed to have authority to do all acts necessary to carry out the particular employment in which he is engaged by the principal."

Leatherwood was unquestionably appellant's agent for some purposes, and the only question of fact here is the extent of that agency, and we are constrained to find that if Leatherwood's act in undertaking the satisfaction of the prior liens was not within the actual scope of his authority it was within the apparent scope, and that the principal who thus held him out must sustain the loss resulting from his infidelity to his trust. *Peoples Life Ins.*

*Co.* v. *Kohn,* 100 Ark. 240; *Oakleaf Mill Co.* v. *Cooper,* 103 Ark. 79.

The decree of the court below will, therefore, be affirmed.