## ATLANTIC LIFE INS. CO. v. ROWLAND et al.

Circuit Court of Appeals, Fourth Circuit.
October 18, 1927.

No. 2614.

1. **Appeal and error** �köö848(1)—**Referee's report, dealing with conclusions of law, held reviewable under decree of reference.**

Where cause was referred to special referee, to take testimony, find conclusions of law and fact, and report the same, report of referee, dealing entirely with conclusions of law, was reviewable.

2. **Principal and agent** �köö160½—**Mortgagee held not liable for misappropriation by agent of itself and mortgagor, made possible by mortgagor's negligence.**

Where person acting as agent for mortgagee and mortgagor in executing loan converted portion of money to his own use, after satisfying mortgage without payment of note secured thereby, without any negligence on part of mortgagee, the mortgagee will not be held liable for amount covered thereby; it appearing that mortgagor was careless and negligent in making no demand for evidence of debt that agent was to have paid, and particularly in turning over check made payable to himself, and such agent making it possible for agent to misappropriate money.

3. **Equity** ⊚öö59—**Parties will be left where they are found in case equities are equal.**

Where equities are equal, the chancellor will leave parties where he found them.

4. **Equity** ⊚öö67—**Delay or negligence, defeating recovery, depends on circumstances of each case.**

Delay or negligence, sufficient to constitute laches and defeat recovery, must depend on circumstances of each case.

5. **Equity** ⊚öö69—**Complainant in equity, to relieve himself of charge of laches, must have been diligent.**

Complainant in a suit in equity, to relieve himself of a charge of laches, must not only

have been diligent in asserting his rights after they were discovered by him, but he must have exercised due diligence to inform himself, and is properly chargeable with all knowledge that due diligence would have disclosed to him.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Ernest F. Cochran, Judge.

Suit by C. G. Rowland against Sarah R. Burgess and others, wherein the Atlantic Life Insurance Company was made a party defendant and had the cause removed from state court, where it was originally brought. From the decree, the Atlantic Life Insurance Company appeals. Reversed and remanded.

A. D. Christian, of Richmond, Va., and George L. Buist, of Charleston, S. C. (Buist & Buist, of Charleston, S. C., on the brief), for appellant.

Charlton Du Rant, of Manning, S. C., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

NORTHCOTT, Circuit Judge. This is a suit originally brought in the court of common pleas of Clarendon county, South Carolina, on January 14, 1925, by one C. G. Rowland, as plaintiff, against Sarah R. Burgess, Mary M. Burgess, A. P. Burgess, and others, for the purpose of foreclosing a lien or mortgage, originally for the sum of $3,500 and executed in February, 1914, on certain real estate by Sarah R. Burgess and Mary M. Burgess, which real estate, or a part thereof, was at the time of the institution of this suit owned by said A. P. Burgess, who had purchased it from his sisters, Sarah R. and Mary M. On the institution of the suit, the three Burgesses above named answered, and prayed that the Atlantic Life Insurance Company, of Richmond, Va., a corporation, appellant, should be made a party defendant to the suit, which prayer was granted. The answer of the Burgesses also prayed for affirmative relief against the insurance company, and asked that the company be required to satisfy the mortgage in question as being primarily liable for its payment. The Atlantic Life Insurance Company, on being made a party, had the cause removed to the District Court of the United States for the Eastern District of South Carolina, and filed an answer therein.

On August 6, 1925, the cause was referred to a special referee, "to take the testimony and find his conclusions of law and of fact and report the same." Testimony was taken, and the referee found against the appellant, which finding was confirmed by the District Judge, and a decree was entered against appellant in favor of A. P. Burgess in the sum of $3,600 and interest, from which decree this appeal was taken.

It appears that, after the original mortgage in question here was executed in favor of Purdy & O'Bryan, it was assigned to C. G. Rowland, plaintiff in the suit below, a banker of Sumter, S. C., to whom the interest on the mortgage was paid by Mary M. Burgess and Sarah R. Burgess until the sale of the land was made by them to A. P. Burgess. It further appears that defendant A. P. Burgess knew that the mortgage was held by the said Rowland, having made him one interest payment in February 1918. A. P. Burgess then applied through one L. M. Hawkins for a loan of $5,000 from the appellant insurance company. After inspection, the loan was granted, and the insurance company designated one S. Oliver O'Bryan, attorney at law, of Manning, S. C., and a partner in the firm of Purdy & O'Bryan, to prepare the necessary legal papers and to do the other things requisite to close the loan. In the designation of O'Bryan as attorney in the matter, A. P. Burgess joined, or at least signified that he was satisfied with O'Bryan's selection. At that time, and for a subsequent period of five years, it is admitted that O'Bryan was a lawyer of good standing, both professionally and financially, and that his selection to do this work was justified. The application for the loan, made by A. P. Burgess, is dated January 25, 1918, and names as the holder of the then existing mortgage, Judge R. O. Purdy. O'Bryan prepared the papers and submitted them to the Insurance Company at Richmond, Va. They were approved, and on June 4, 1918, the insurance company wrote A. P. Burgess as follows:

"We have to-day sent to S. Oliver O'Bryan, attorney, of Manning, S. C., check for $5,000, payable to A. Plumer Burgess and S. Oliver O'Bryan, attorney, with instructions to close this loan subject to all our legal requirements. As personal indorsements of each payee of the check are necessary, arrangements should be made for all persons interested to communicate with the attorney at once, so that the loan may be closed without delay."

O'Bryan secured Burgess' indorsement on the check, which was payable to them jointly, with the understanding that he was to pay off the existing mortgage, the expenses of the loan, and deposit the remainder to the credit of A. P. Burgess in a bank. The mortgage that was to be paid off was owned by Row-

land, but stood on the records in the name of Purdy & O'Bryan; no transfer of record having been made when the mortgage was sold to Rowland, such transfer of record not being required by the South Carolina law. O'Bryan indorsed the satisfaction of the mortgage on the records, and so certified to the insurance company, paid the balance that was due to A. P. Burgess, and put the money that should have been used to pay off the mortgage in his pocket, converting it to his own use.

For five years O'Bryan secured extensions of the loan from Rowland and kept the interest paid; O'Bryan in the meantime remaining in good standing until the year 1923, when rumors concerning his dealings began to be circulated, and he later absconded, when it was discovered that this was only one of many transactions in which he had been dishonest in converting money that did not belong to him to his own use. In the meantime A. P. Burgess had repaid the insurance company the entire loan of $5,000, and did not know of the fact that the Rowland mortgage had not been paid off until O'Bryan absconded. A P. Burgess did not, at the time of the supposed payment of the first mortgage, nor at any time within the succeeding five years, demand of O'Bryan or Rowland the bond or note, or whatever evidence of debt it was that was secured by the mortgage, or the canceled mortgage itself, nor is there any evidence that Sarah R. Burgess or Mary M. Burgess, his sisters, from whom he had purchased the property, demanded the said evidences of debt or the canceled mortgage, from either O'Bryan, the lawyer, or Rowland, whom they knew to be the owner of the mortgage.

In considering the questions involved, we are at the outset confronted by the fact that, while both A. P. Burgess and the Atlantic Life Insurance Company are nominally defendants in the suit, yet it was at the instance of A. P. Burgess, that the insurance company was made a party to the suit, and the said Burgess is asking for affirmative relief against the insurance company. It is clear that A. P. Burgess stands in the position of complainant, and must therefore carry the burden of proof in the case. In other words, in asking that the money in possession of the insurance company be transferred by the courts to the possession of Burgess, Burgess must make a case.

[1] The first point raised is as to whether or not the report of the referee is reviewable. The facts in the case are all admitted, and there is no conflict whatever in the evidence. Under the decree of reference, the holding of the trial judge that the report of the referee, dealing as it does entirely with conclusions of law, was reviewable, is correct. Davis v. Schwartz, 155 U. S. 636, 15 S. Ct. 237, 39 L. Ed. 289; Denver v. Denver Union Water Co., 246 U. S. 180, 38 S. Ct. 278, 62 L. Ed. 649.

[2] O'Bryan was unquestionably the agent of both parties. He was the agent of the insurance company for certain purposes, and of Burgess for other purposes. It is true that he was designated by the insurance company, but the selection was ratified by Burgess, and Burgess agreed to have prepared and submit at his own expense all necessary papers by attorney or attorneys designated by the company, and was to pay the fees of the attorney. Burgess was on the ground, and knew O'Bryan personally; the officers of the insurance company were at a distance and could have known O'Bryan only by reputation. It is admitted that at the time of the transaction and for a period of at least five years thereafter O'Bryan's reputation was good, and that his standing as a lawyer justified his selection.

A careful study of the course taken by the insurance company throughout the entire transaction in lending the money to A. P. Burgess does not disclose anything the insurance company did that was in any way negligent, or anything that it left undone that was in any way careless. It seemingly took every possible precaution that could have been taken to prevent the very thing that did happen from happening. It required Burgess' approval of the designation of O'Bryan, as the attorney to handle the matter, and after the papers were seemingly correct, in sending the money by check, it made the check payable, not to O'Bryan, the attorney, but jointly to O'Bryan and A. P. Burgess, and wrote Burgess, telling him that arrangements should be made to have interested parties communicate with the attorney. In making the check jointly payable, and requiring Burgess' indorsement before the money became available to anybody, it seems to us that the insurance company thereby placed upon Burgess the responsibility of at least keeping some check on the transaction. It is admitted that the insurance company took every possible precaution to safeguard the interest of all concerned.

We do not find the same condition with regard to carefulness and lack of negligence on the part of A. P. Burgess. Burgess indorsed the check and turned it over to O'Bryan, thereby making it possible for O'Bryan to misappropriate the money. Burgess' testi-

mony on this point as to what happened when he indorsed the check and turned it over to O'Bryan was in these words: "My instructions were to pay up the matter, and pay off all the debts, and bank the balance for me. * * *" The plain import of these words unquestionably made O'Bryan A. P. Burgess' agent, for those particular things mentioned by Burgess.

It is urged with some force that the letter of commitment of February 15, 1918, from the insurance company to A. P. Burgess, notified the borrower that the money was to be disbursed by O'Bryan, the local attorney; but it is also true that such notification was to the effect that O'Bryan was to disburse the money only after certain things were done, such as the recordation of the mortgage security and the release of all prior liens. The tenor of this letter of commitment certainly placed upon the borrower the necessity of at least participating in these acts necessary before O'Bryan was authorized to disburse the money. This Burgess did not do.

Again, it seems to us that A. P. Burgess was guilty of carelessness and neglect in not demanding of O'Bryan, or of Rowland, the owner of the mortgage, the canceled evidences of a debt that was supposed to have been paid. This negligence covered a period of more than five years, during all of which time O'Bryan remained in good standing, both financially and professionally, and at any time during the more than five years a demand by Burgess of the evidences of debt might have resulted in an avoidance of any loss by either Burgess or the insurance company.

Burgess knew that the prior mortgage was no longer owned by Purdy & O'Bryan, to whom it was given, and in whose name it was on the records, but that it was held by Rowland. Burgess himself had paid an installment of interest to Rowland shortly before the closing of the loan from the insurance company. Of this situation the insurance company had no knowledge whatever.

[3] It is a rule )of equity that, where the equities are equal, the chancellor will leave the parties where he found them. It certainly cannot be said that in this case that the equities are unequal as against the insurance company. On the contrary, if there is any inequality, it is as against Burgess. If there was any carelessness or neglect, it was the carelessness and neglect of Burgess, first in indorsing the check and turning it over to O'Bryan, thereby making it possible for O'Bryan to misappropriate the money, a thing the insurance company, by its act in making check payable to Burgess and O'Bryan jointly, had deliberately refused to do; and, second, in delaying for more than five years to demand the evidences of debt, supposedly canceled.

[4] As to what delay or negligence will constitute laches and defeat recovery must depend on the circumstances of each case. 7 Enc. U. S. C. C. R. 798, and cases there cited.

[5] A complainant in a suit in equity, to relieve himself of a charge of laches, must not only have been diligent in asserting his rights after they were discovered by him, but he must have exercised due diligence to inform himself. And he is properly chargeable with all the knowledge that due diligence would have disclosed to him.

"The defense and want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove; and hence the tendency of courts in recent years has been to hold plaintiff to a rigid compliance with the law, which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts. Especially is this the case where the party complaining is a resident of the neighborhood in which the fraud is alleged to have taken place. * * *" Foster v. Mansfield, etc., R. Co., 146 U. S. 88, 13 S. Ct. 28, 36 L. Ed. 899. See, also, Halstead v. Grinnan, 152 U. S. 412, 14 S. Ct. 641, 38 L. Ed. 495.

Equity "will never be called into activity to remedy the consequences of laches or neglect, or the want of reasonable diligence." Creath v. Sims, 5 How. 192, 12 L. Ed. 111.

A study of cases involving situations similar to the one here discloses a conflict of authority, and the opinions seem very much divided on the question as to whether or not the absconding attorney is the agent of the lender; but there is no conflict in the authorities as to the fact that each case must be settled according to the peculiar conditions surrounding it, nor could there well be any settled rule or fixed principle applicable to all cases of this character. Among those decisions holding the attorney to be the agent of the lender are Stockton v. Watson (C. C. A.) 101 F. 490; Commonwealth Farm Bureau v. Wall, 122 Ark. 281, 183 S. W. 193; McLean v. Fiske, 94 Iowa, 283, 62 N. W. 753; Day v. Dages, 17 Ind. App. 228, 46 N. E. 589; Larson v. Lombard, 51 Minn. 141, 53 N. W. 180; Jensen v. Lewis Inv. Co., 39 Neb. 371, 58 N. W. 100; State Bank v. Saule, 70 Mont. 300, 225 P. 127; Donaldson v. Kenegy, 197

Iowa, 893, 196 N. W. 587; Gibson v. Davenport, 29 Ohio St. 309; Adams v. Adams, 7 Ohio St. 83. Among those holding that the attorney was the agent of the borrower, especially for the purpose of disposing of the prior liens, are Bates v. Am. Mtg. Co., 37 S. C. 88, 16 S. E. 883, 21 L. R. A: 340; Knox County v. Goggin, 105 Mo. 182, 16 S. W. 684; Blackwell v. Br. Mtg. Co., 65 S. C. 105, 43 S. E. 395; Ridgefield Svgs. Bank v. Sherwood, 91 Conn. 648, 100 A. 1063; Schuling v. Ervin, 185 Iowa, 1, 169 N. W. 686; Engleman v. Reuse, 61 Mich. 395, 28 N. W. 149; Trustees v. Livingston, 210 Pa. 536, 60 A. 154; May v. Ins. Co., 72 Mo. App. 286; Pepper v. Cairns, 133 Pa. 114, 19 A. 336, 7 L. R. A. 750, 19 Am. St. Rep. 625; Kirkpatrick & Howard v. Warden, 118 Va. 382, 87 S. E. 561; Henken v. Schwicker, 174 N. Y. 298, 66 N. E. 971.

In Stockton v. Watson, supra, the lender was the complainant, and as such carried the burden. The situation here is a contrary one. In the Stockton Case, the defaulter acted generally as agent for the lender. No such situation existed here, and as far as the record discloses this is the only time O'Bryan ever acted for the insurance company, and his designation in this case was ratified by Burgess. In Commonwealth Farm Bureau v. Wall, supra, the defaulter was clearly the agent of the lender, and was known as his local correspondent. In McLean v. Fiske, supra, the money was sent direct to the agent closing the loan, and in this case the court says: "Each case must be decided according to its peculiar circumstances."

In Larson v. Lombard, supra, the defaulter was the duly appointed correspondent of the lender. In Jensen v. Lewis Inv. Co., supra, the defaulter had for a long time been agent for the lender and was under bond to the lender. In Donaldson v. Kenegy, supra, the peculiar circumstances of that case made it clear that the absconder was the agent of the lender, and there the court says: "Whether an intermediary in a loan transaction is the agent of the borrower or lender depends on the particular circumstances, such as the source of his compensation, preparation of the necessary instruments, and the course of prior dealing." * * *

In the present case, Burgess was to pay O'Bryan, and the action of Burgess in directing O'Bryan what to do with the money, when he indorsed the check and turned it over to him, was not only an implied, but an express, delegation of authority to O'Bryan.

Among those cases holding the interme-

diary to be the agent of the borrower, perhaps the one more nearly in point with the present case is the case of Kirkpatrick & Howard v. Warden, supra, and there the court held that the clearing of the title was clearly the primary duty of the borrower. In Henken v. Schwicker, supra, the court says: "As the mortgage" to be executed "was conceded to be a first mortgage, it was clearly the duty of the 'borrower' to see that the prior lien was paid out of the proceeds of the loan."

In the instant case the insurance company requested Burgess to attend to this duty in the letter transmitting the check. A study of the decisions will show that in a large majority of the cases, where the money was directly turned over to the defaulter by the borrower, by the indorsement of a check, that it had the same effect as the cashing of the check by the borrower and the delivery of the cash to the intermediary, and where this occurred, with one or two exceptions, the courts have held that it was the act of the borrower that made it possible for the intermediary to misapply the funds.

"Situations often arise where one of two innocent persons must suffer from the wrongs of a third, and where the courts, through compulsion, are obliged to impose a hardship upon one to save a loss to the other. The maxim decisive of such cases is that the loss must fall upon the one who comes the nearer to responsibility for the wrong of the offender." Breyfogle v. Walsh (C. C.) 71 F. 898; Stockton v. Watson (C. C. A.) 101 F. 491, supra.

In a well-considered opinion, Judge Parker, of this court, in Cleve v. Craven Chemical Co., 18 F.(2d) 711, quotes the settled principle that, "whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it"; and this court, in Norton v. City Bank & Trust Co., 294 F. 839, said: "In such cases as that here involved, it is true that the agent has proved false to his trust, and some innocent person must be the loser. Should it not be the one who gave him the power which he misused?"

In this case was it not the action of Burgess, in indorsing the check payable jointly to O'Bryan and himself and turning it over to O'Bryan, that enabled O'Bryan to steal the money, and that gave O'Bryan the power which he misused? We think so. The fact that no negligence or carelessness can be laid at the door of the insurance company, while, on the contrary, Burgess was careless and negligent in making no demand for the evi-

dences of debt that he knew that O'Bryan should have paid, and the further fact that it was the action of Burgess in turning the check over to O'Bryan that was the immediate act that allowed O'Bryan to misappropriate the money, seem conclusive of the issue here.

We are of the opinion that the learned judge below was in error in confirming the report of the special referee and entering a decree against the appellant, and, for the reasons stated, the decree of the District Court is reversed, with costs, and the cause is remanded to the District Court for further proceedings in conformity with this opinion.

Reversed.