SALLY N. PEPPER, TRUSTEE, v. JOHN CAIRNS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

*Argued January 14, 1890—Decided March 10, 1890.*
[To be reported.]

1. Nothing is better settled than that the declarations of an alleged agent are not admissible as proof of his agency; so, the conversation of a conveyancer with a person applying to him in reference to obtaining a loan, when offered for the purpose of showing that in the transaction the conveyancer was acting on behalf of the lender, and not for the borrower, falls within this principle.

(a) Cairns, desiring to borrow money upon a mortgage, for use in extinguishing existing encumbrances, applied to Ruhl, a conveyancer, for the purpose of getting it. Ruhl wrote to Sergeant, the trustee of several estates to whom he had previously brought applications for loans, stating the circumstances of Cairns's application and inquiring, " shall I take it, and for whose àccount ? "

(b) Sergeant agreed to take the mortgage for the Pepper estate. Cairns executed a mortgage and placed it in the hands of Ruhl, who delivered it to Sergeant and received the latter's check for the amount of the loan. Ruhl applied a part of the money in the extinguishment of one of the prior encumbrances against Cairns, but embezzled the remainder:

2. In such case, Ruhl unquestionably was to some extent the agent of both the parties, but the facts do not show that he was acting in the capacity of agent for the Pepper estate in handling the money; nor was the act of Sergeant in paying the money to Ruhl, upon receiving the mortgage from him, negligence toward Cairns; wherefore, the embezzlement by Ruhl was not a defence to the mortgage.*

BEFORE PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 458 January Term 1889, Sup..Ct.; court below, No. 397 March Term 1888, C. P. No. 1.

On March 31, 1888, Sally N. Pepper, surviving trustee under the will of Henry Pepper, deceased, brought a scire facias against John Cairns upon a mortgage dated October 10, 1886, given by the defendant to J. Dickinson Sergeant and Sally N.

*See Sergeant v. Martin, post 122.

Pepper, trustees, etc.    The defendant pleaded payment, payment with leave, etc.

At the trial on January 11, 1889, the plaintiff, after putting in evidence the mortgage in suit, rested.

The defendant then called J. Dickinson Sergeant, who was one of the mortgagees but had resigned his trusteeship before the commencement of this suit.    The witness testified as follows:

The trustees of the Pepper estate in 1886 were Sally N. Pepper and myself, but I was the acting trustee and attended to all the business of the estate.    I made all the investments. My office was at 420 Walnut street; John Ruhl's office was at 512 Walnut street.    I have known him ten or twelve years. He never represented me or the estate in investing money.    I do not remember this particular mortgage.    It passed into my possession, but I could not say when.    It was paid for with the money of the Pepper estate.    I gave the money to John Ruhl.    I gave it to him for Mr. Cairns.    He represented Mr. Cairns.    I never gave Ruhl money, unless I knew where it was to go.    I never saw the parties.    I believe it has been my invariable custom to draw the check to the order of John Ruhl, and not to the parties.    I never examined the papers or mortgages before I paid the money, but always took Ruhl's statement, as I would that of any other reputable conveyancer, that the papers were ready.    I cannot say positively that I examined this mortgage in suit before now.    If Ruhl had a mortgage which he thought was a desirable investment, he would submit to me a memorandum of it showing the nature of the security, and then I would examine and approve or disapprove of it.    If I approved of it, I would tell him for which estate to take the mortgage.    He did so in this case, and I took the mortgage for the Pepper estate.    Mr. Ruhl was never employed in my office, he was at 512 Walnut street.    He never collected the principal of mortgages; sometimes he collected the interest, but he had no authority to collect for the estate.    I never objected.

Q. What, if anything, do you know about Ruhl making a confession or statement, to the representatives of the Pepper estate, of sums of money misappropriated by him?

A. I have no personal knowledge of it.    I was not present. Mr. Pile was the attorney for the estate.

On cross-examination, the witness testified that Ruhl was never employed by him and never was agent for the Pepper estate ; that the course of dealing with him by the witness was the same as with any other reputable conveyancer ; and that he never received commissions from the witness, or from any estates which the witness represented.   The witness also produced and identified a letter from Ruhl to the witness, and the check given by the witness to Ruhl for the amount of the loan, which were thereupon put in evidence.   The letter, which was dated September 27, 1886, and signed by John Ruhl, stated that Ruhl had an application for a loan of $6,500, described the security offered for the loan, and inquired, " shall I take it, and for whose account ? "   The check was for $6,500, dated October 15, 1886, was made payable to John Ruhl, or order, and was signed by Sergeant as trustee of the Pepper estate.

The defendant called also Mr. Joseph M. Pile, who testified as follows :

I am attorney for the Pepper estate ; that is, I represented the trustee, but I never saw Mrs. Pepper.

Q. Was not a written confession or statement handed to you, as the attorney of the Pepper estate, by Ruhl ?

Objected to.

By the court : Objection sustained ; exception.[1]

The defendant being sworn, gave the following testimony on his own behalf :

I am the defendant.   In 1886 I had two encumbrances on my property on Kensington Avenue, a building association mortgage of nearly $3,500, and a ground rent of $3,000 ; I desired to merge the two in one.   I went to F. P. Beale, a conveyancer.   He said at that time he had money, but I neglected the matter for sometime, and when I called on him again he said he had not the money, but that he would take me to a party who had money to loan.   I went with Mr. Beale to John Ruhl's office, and he said he had.

Counsel for defendant then offered to prove the conversation with John Ruhl to show that he acted for the estate.

Offer objected to.

By the court : Objection sustained ; exception.[2]

The witness continued :

I never employed John Ruhl as my agent ; never paid him

Arguments.

a dollar in my life; did not pay him for drawing the mortgage in suit. The building association mortgage of $3,494 was paid off by Ruhl, but the ground rent was not paid. I did not receive a dollar of the money represented by the check drawn by Sergeant to John Ruhl, nor did I authorize any person to receive the money for me.

At the close of the testimony, the defendant requested the court to charge the jury:

1. That, J. Dickinson Sergeant having given John Ruhl the money to invest in mortgages for the Pepper estate, and this course of dealing having continued for many years, it is evidence from which the jury may draw the fact of agency; and that if he was the agent of the Pepper estate, the defendant would be entitled to a set-off to the extent of the sum of money misappropriated by his agent Ruhl.

Answer: Refused.[3]

The court, BREGY, J., so answering the defendant's point, directed the jury to render a verdict for the plaintiff for the full amount of her claim with interest.[4]

The jury rendered a verdict in favor of the plaintiff for $7,556.25. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal, assigning for error:

1, 2. The refusal of the defendant's offers.[1] [2]

3. The answer to the defendant's point.[3]

4. The instruction to find for the plaintiff.[4]

*Mr. M. J. O' Callaghan*, for the appellant:

1. By the question put to the witness, Joseph M. Pile, the defendant did not ask for information which he had obtained as counsel for the plaintiff, because he had not seen her; nor was he asked to state the contents of the paper, but whether or not such a paper had been executed by the defaulter Ruhl and handed to him. The question was proper and did not come within the rule excluding communications to counsel: Greenough v. Gaskill, 1 M. & K. 101; Bolton v. Liverpool, 1 M. & K. 95; People v. Sheriff, 29 Barb. 622; 1 Thompson on Trials, 278; Mitchell's Case, 12 Abb. Pr. 249; Greenleaf

Arguments.

on Evidence, § 239 *a;* Wharton on Evidence, §§ 585, 588; Levers v. Van Buskirk, 4 Pa. 309.

2. The offer to prove the conversation with Ruhl at the time of negotiating the loan was proper. The defendant had laid the ground for it by showing that Ruhl had been the medium through which Sergeant, the acting trustee, largely invested the funds of the estate, and had collected for the trustee interest on such investments without any objection from the plaintiff. Agency may be made out by circumstances as well as by direct proof: Jordan v. Stewart, 23 Pa. 247. Moreover, the check and letter identified by Sergeant show that Ruhl was his agent, as they do not disclose the name of any person but Ruhl and do not connect the defendant with the transaction. The testimony offered was therefore admissible to show the fraud practiced on the defendant: Central Pa. Tel. Co. v. Thompson, 112 Pa. 118; Sydney Sch. Fur. Co. v. Warsaw Sch. D., 122 Pa. 494; Cover v. Manaway, 115 Pa. 338; Lewars v. Weaver, 121 Pa. 268; and as the plaintiff did no more than make a general objection to the offer, it was error to exclude it if competent for any purpose: King v. Faber, 51 Pa. 387.

3. There was no evidence that Ruhl was the agent of the defendant. And even if he were so for the purpose of drawing papers, or asking whether the plaintiff would make the loan, this would not authorize the plaintiff to pay the money to him: 2 Pars. on Cont., § 615; 2 Addison on Cont., §§ 342, 542; Seiple v. Irwin, 30 Pa. 513; Wilkinson v. Candlish, 5 Exch. 91; Kent v. Thomas, 1 H. & N. 473. If Ruhl were the agent of both parties, the defendant would not be chargeable with the amount of the check until notified that the money had been paid to Ruhl for him: Cavanaugh v. Buehler, 120 Pa. 441. If the parties are equally innocent sufferers, the party who put it into the power of Ruhl to misapply the money must bear the loss: Green v. Rick, 121 Pa. 130. As there was evidence of Ruhl's agency for the plaintiff, the defendant's point should have been affirmed: Allegheny V. R. Co. v. Steele, 11 W. N. 113; and the case should not have been taken from the jury: Sydney Sch. Fur. Co. v. Warsaw Sch. D., 122 Pa. 494.

*Mr. S. E. Megargee* (with him *Mr. Joseph M. Pile*), for the appellee:

1. Whether a written confession or statement was handed by Ruhl to the attorney of the Pepper estate, had no bearing on the issue, and what Ruhl said or did could not affect the plaintiff. The offer was not rejected on any theory of confidential communications, but because the paper could not be admissible, even if given to the plaintiff. Neither can any conversations between Ruhl and the defendant, in the absence of the mortgagee. Ruhl was the defendant's agent. In the same breath in which he denies that he employed Ruhl, the defendant says that he applied to him as a conveyancer to obtain the loan.

2. Of course, Mr. Sergeant never objected when Ruhl paid over interest left with him by mortgagors. Such things happen every day. It is not necessary that a mortgagee pay his interest personally; his contract always is to " pay or cause to be paid." But that Ruhl was the agent of the estate, there is no evidence. The declarations of an alleged agent are not proof of the fact of agency: Jordan v. Stewart, 23 Pa. 244; Grim v. Bonnell, 78 Pa. 152; Whiting v. Lake, 91 Pa. 349. That Ruhl prepared the mortgage and delivered it to the mortgagee, did not constitute him the latter's agent: Lewars v. Weaver, 121 Pa. 268; West v. Jones, 1 Sim., N. S., 208; Adsetts v. Hires, 33 Beav. 52. As there was not a scintilla of evidence to establish the defendant's contention, the binding instruction was proper.

OPINION, MR. JUSTICE MITCHELL:

This case belongs to that unfortunate class in which one of two innocent parties must suffer from the fraud of a third; and it is also an illustration of the evils of the practice, so constantly reprobated by courts, but apparently so inveterate in business, of the same person being employed as agent by separate parties whose interests are, or at any moment may become adverse. The legal principles by which such controversies are to be settled are perfectly clear, but require much care in their application.

The essential facts in this case are not really in dispute. The appellant Cairns, desiring to borrow money upon a mortgage of his houses, went to Ruhl for the purpose of getting it. Ruhl, who was a conveyancer and real-estate agent, wrote to

Sergeant, the trustee of several estates from whom Ruhl had got money on previous occasions, naming the amount wanted, describing the property, its improvements, assessed value, etc., and asking, "shall I take it, and for whose account?" Just what answer was made to this letter does not appear, except briefly in the testimony of Sergeant that he "took the mortgage for the Pepper estate," and by the fact that Sergeant drew his check as trustee of the Pepper estate to the order of Ruhl for the amount required, $6,500, and received from Ruhl the mortgage in suit. Ruhl used $3,500 of the money properly in the extinguishment of a prior mortgage on the property, but embezzled the rest, and the question now to be decided is, upon which party shall the loss fall? Ruhl unquestionably was to some extent the agent of both parties, and we are required to look closely into the facts to discover in which capacity he did the fraudulent act. Clearly, at the inception of the transaction, he was the agent of Cairns. It was an application for money, and made on behalf of Cairns. But, more than this, what was to be done with the money when obtained, and by whom? Cairns himself says the prior encumbrances were to be paid off and satisfied, and clearly, again, this was to be done by Ruhl, for that was in the line of his business as a conveyancer, and Cairns so left it to him, without even an inquiry for a period at least of months.

On the other hand, for what purposes was Ruhl the agent of Sergeant? Certainly, for the examination of the property, the title, etc. If the property should prove an inadequate security, or if prior judgments or other encumbrances should cut out this mortgage, then the estate would have to bear the loss, for they took the risk of Ruhl's attention to this part of the transaction. But is there any evidence of Ruhl's further agency for the plaintiff? This was the pinch of the case, and on this the learned judge below ruled it. The evidence is very briefly reported in the bill of exceptions, but the most careful examination of it fails to show that Ruhl's agency for the plaintiff extended beyond his duties as a conveyancer in the examination of the titles, etc. The defendant endeavored strenuously to show that Ruhl was the general agent of Sergeant, and had handled the money of several estates as such; but the only competent evidence on the subject was the testi-

Opinion of the Court.

mony of Sergeant, and that flatly denied the agency. Ruhl, he says, "never represented me, or the estate, in investing money. . . . . If Ruhl had a mortgage which he thought was a desirable investment, he would submit to me a memorandum, . . . . and I would examine and approve or disapprove of it." It is clear that Sergeant transacted the business of the estate himself, retained his own judgment as to each investment, and left only the details of conveyancing to Ruhl. His testimony shows no agency beyond this point, and there is no other evidence in the case. Nothing is better settled than that agency cannot be proved by the declarations of the alleged agent, and the offers in the first and second assignments of error amount to no more than such declarations.

It is urged that Sergeant's act in drawing his check to the order of Ruhl, and not to Cairns, was negligence, and that, on the principle that he who put into the fraudulent hand the means of perpetrating the fraud should bear the loss, Sergeant or his principal should be responsible for Ruhl's act. But this is a misapplication of the principle. The means of committing the fraud may as well be said to be the mortgage, executed by Cairns and left with Ruhl and by him delivered in exchange for the check. As already seen, Ruhl was Cairns's agent in the application for the money, and was to continue his agent in the use to be made of it. When he brought the mortgage, fully executed, to Sergeant, the latter was justified in paying for it on delivery. He might have paid for it in cash, and his payment by check to Ruhl's order was not different in effect.

The case turned upon the question of agency, which the double capacity of Ruhl required to be defined with extreme care. The whole evidence not only fails to show that Ruhl was Sergeant's agent in handling the money, but, on the contrary, shows clearly that he received it as agent for Cairns, and in that capacity embezzled it. The learned judge was therefore right in directing a verdict for the plaintiff.

Judgment affirmed.