## Powell *v.* Old Hickory Building & Loan Association, Appellant.

## Russell *v.* Old Hickory Building & Loan Association, Appellant.

*Principal and agent—Embezzlement by agent of two parties—Liability of principal—Evidence of agency—Capacity in which agent acted at time—Competency of agent as witness.*

1. Two suits in equity were brought to compel a building and loan association to pay off two ground rents and a mortgage on properties owned by the respective plaintiffs.   It appeared that plaintiffs had applied to defendant for first mortgage loans to pay off encumbrances on the properties which they owned; that defendant's conveyancer was plaintiffs' agent for obtaining the loans; that defendant's treasurer issued orders in plaintiffs' name which were given to the conveyancer, that plaintiffs endorsed the orders and returned them to the conveyancer who obtained a check from the treasurer in his own name as attorney, for the amount of the loan, less fees, dues and premiums, that it was the custom of the association for the conveyancer to receive money advanced and after settling all liens and claims against the property to pay over the balance to the person obtaining the loan; that in accordance with this custom the conveyancer cashed the check and paid the part due the borrowers, but embezzled the part of the money applicable to the payment of the encumbrances, and reported to defendant that the mortgages were first liens on the real estate in question.   The lower court held that at the time when the conveyancer embezzled the money he was acting as agent for defend-

ant and that the loss must fall on defendant and awarded the relief prayed.  *Held,* no error.

2. Where the powers and duties of an agent are not in writing he is a competent witness to prove the extent of his authority, while he may not give his conclusion as to the fact of agency, he may testify as to the facts and circumstances surrounding the transaction between him and his principal, leaving to the court and jury to determine under the facts disclosed, whether or not he was the agent, and the extent of his authority.

Argued Jan. 11, 1916.  Appeals, Nos. 415 and 416, Jan. T., 1916, by defendant, from decrees of C. P. No. 2, Philadelphia Co., Sept. T., 1914, No. 4324, in equity and C. P. No. 5, Philadelphia Co., Dec. T., 1914, No. 3086, in equity, for the respective plaintiffs, in cases of John Powell and Jane Powell v. Old Hickory Building and Loan Association and George S. Russell v. Old Hickory Building & Loan Association.  Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ.  Affirmed.

Bill in equity to compel defendant to pay off and extinguish two ground rents.  Before SULZBERGER, P. J.

Bill in equity to compel defendant to pay off and satisfy a mortgage.  Before RALSTON, J.

From the record in the case of Powell v. Old Hickory Building & Loan Association, it appeared that the plaintiffs, in August, 1912, agreed to purchase premises Nos. 3147 and 3149 Chatham street, Philadelphia, for the sum of $950, subject, however, to two redeemable ground rents of $54 each per annum, the redemption money for which amounted, together, to $1,800.

As they had no understanding of the financial details or processes involved, they placed it in the hands of a conveyancer properly recommended to them.  An acquaintance had named F. A. Friend as a trustworthy conveyancer.  It happened that he was also an official conveyancer of the defendant society and had held that position for at least five years.  He told them that the

transaction was manageable by negotiating a mortgage. They said that they would like to deal with the defendant society.

The plan was carried out. The plaintiffs paid Friend the $150. He took out the shares in their names. The defendant agreed to take a first mortgage of $2,600 and paid over that sum to Friend, who handed the $950 to the vendor and thereby procured title for the plaintiffs. He, however, failed to apply the other $1,800 to the redemption of the ground rents and diverted that sum to his own use.

The mode in which the building association paid the money was this: They gave to Friend an order on the treasurer to pay $2,600 to the order of John and Jane Powell, handed this order to Friend, who procured the endorsement of John and Jane Powell thereto, took it away, brought it to the treasurer and himself obtained the money in the form of a check drawn to his order as attorney. He collected the money on that check and disposed of it as already stated.

Friend's position as conveyancer of the association was by virtue of a by-law which provided as follows: "The directors shall elect one or more conveyancers who shall be a member of the association, who shall continue in office until their successor or successors are chosen."

The association paid no salary or other compensation to Friend for the performance of his duties as conveyancer. He was the conveyancer as well of the plaintiffs as of the defendant.

From the record in the case of Russell v. Old Hickory Building & Loan Association, it appeared that the plaintiff in August, 1912, was the owner of premises 1104 Duncannon street, against which there was a first mortgage of $3,700 and a second mortgage of $1,400.

In August, 1912, the plaintiff made an application to the defendant in the manner hereinafter stated for a loan of $4,200 on mortgage, and also subscribed to twenty-one shares of the stock of the defendant association.

The plaintiff had had some business relations with Friend, and in August, 1912, informed him that he desired to pay off the two mortgages on the property 1104 Duncannon street and create a building and loan association mortgage. Friend mentioned several building associations and the plaintiff selected the defendant. Application for the loan was then made to the association by Friend on behalf of the plaintiff. The committee on property of the defendant association recommended the loan, and upon the original application the report of their conveyancer Friend appears, in which he states that he has examined the title to the property offered by Russell, and has taken out the necessary searches and found it all correct.

Upon the strength of this report the loan was authorized, and the secretary issued an order to the treasurer of the defendant association to "Pay to the order of G. S. Russell $4,200 for loan on twenty-one shares of the sixty-eighth series, 1104 Duncannon street. Clear by order of the board of directors." On the foot of this order there was a blank receipt in the following form:

"Received from          Treasurer          Dollars, in full in payment of the above order."

This receipt was given by the treasurer to Friend, who took it to the plaintiff and told him to sign it in order that he (Friend) could get the money from the building association. The order was signed by the plaintiff and subsequently presented by Friend to the treasurer of the association, who thereupon handed to Friend a check drawn to his order as agent for $4,200 less fees, dues and premiums amounting to $170.10, making the net amount of the check $4,029.90.

The plaintiff executed a bond and mortgage for $4,200 on 1104 Duncannon street to the defendant association, which was duly delivered to its treasurer.

Friend did not pay off the first mortgage of $3,700, but embezzled the money which came into his hands upon

payment of the check drawn by the treasurer of the defendant association to his order as agent.

Friend paid the interest on the first mortgage of $3,700 as it fell due, so that the fraud was not discovered for some time.

The plaintiff prays that the defendant be directed to pay off the $3,700 first mortgage, together with interest due thereon, and return to the plaintiff the interest which he has paid on this mortgage.

The court in each case awarded the relief prayed for. Defendant appealed from the decree in each case.

*Errors assigned* were in dismissing various exceptions to findings of the trial judges and the decrees of the courts.

*Wayne P. Rambo,* with him *Robert Mair* and *Ormond Rambo,* for appellants.—The embezzlement was the embezzlement of the plaintiff's agent, and the loss falls on them: Pepper v. Cairns, 133 Pa. 114; Reformed Presbyterian Church v. Livingston, 210 Pa. 536; Sergeant v. Martin, 133 Pa. 122; Cunningham v. Mutual Bldg. & Loan Assn., 6 Pa. D. R. 99; Mutual Building & Loan Assn. v. Johnson, 7 P. D. R. 729.

*Henry A. Hoefler,* for appellees.—The conveyancer was the agent of the association at the time when he committed the embezzlement.

OPINION BY MR. JUSTICE MESTREZAT, March 13, 1916:

These are appeals by the Old Hickory Building and Loan Association, the defendant, from decrees entered against it in the Courts of Common Pleas Nos. 2 and 5 of Philadelphia County, in which John Powell and wife and George S. Russell are plaintiffs, respectively, to compel the defendant to pay and extinguish two ground rents in the one case, and to pay and satisfy a mortgage in the other case. The cases grow out of substantially

similar transactions and the learned chancellors who heard them came to the same conclusion on a similar state of facts. The counsel are the same in both cases, and the courts entered substantially the same decrees. The appeals, therefore, are considered and disposed of together as one and the same case.

The facts are found from the testimony of the plaintiff, the defendant introducing no evidence. The exceptions on which the numerous assignments in each case are based are principally to the facts found by the learned chancellor. We have examined the record in each case with great care and are convinced that the evidence is ample to sustain the findings of fact, and that the inferences drawn therefrom and the conclusions of law are fully warranted from the facts found. The chancellor has found and stated the facts at length and those material to the decision of these appeals will be found in the reporter's notes. The elaborate opinion discusses the evidence and the law, and fully vindicates the decrees which were entered.

In August, 1912, the Powells and Russell applied to the defendant building and loan association for a first mortgage loan: the Powells for the purpose of paying off two ground rents on premises they intended to purchase, and Russell for the purpose of paying off two mortgages on certain properties which he owned. Frank A. Friend, a real estate broker and defendant's conveyancer, attended to both applications and all other matters incident to the transaction for both plaintiffs and defendant. He received the money from the defendant association and embezzled the part which should have been applied in redeeming the two ground rents and in paying one of the two mortgages. The learned counsel for the appellant properly concede that although the assignments of error are numerous they present but a single controlling question, viz: Did Friend embezzle the money in question as the plaintiff's or the defendant's agent? The learned chancellor held he was the defend-

ant's agent, and decrees were entered in accordance with the relief prayed for in the bills. The defendant contends that some of the findings of fact are not supported by the evidence, but that if the facts were correctly found, the court erred in holding that Friend was acting as defendant's agent and hence drew an erroneous conclusion of law as to the liability for the loss occasioned by his embezzlement of the money.

It may be conceded, for the purpose of disposing of these appeals, that Friend was the agent of the plaintiff during part of the transaction in obtaining and securing the loan. In fact, it may be admitted that he was his agent until the checks were given by defendant's treasurer on which Friend drew the money with which to pay the ground rents and the two mortgages. The order on the treasurer was issued by the defendant in the name of the plaintiff and was delivered to Friend but, as the court properly finds under the evidence, with the express or implied understanding that under no circumstances should the plaintiff get control of it, and that all he had to do was to endorse it and let Friend carry it away. Friend took the order to the plaintiff who signed the receipt attached thereto and endorsed the order so that Friend could get the money. He subsequently presented the order to the treasurer of the association who drew a check to the order of "Frank A. Friend, attorney," for the amount of the loan, less small amounts for fees, dues and premiums. The defendant was to have a first mortgage on the property of the plaintiff to secure its loan, and the encumbrances had necessarily to be removed before the defendant's mortgage, as understood by the parties, would be a first lien on the real estate. Friend was elected as one of defendant's official conveyancers who are required to be members of the association, and had served in that position for several years prior to the date of the loan. His duties were not defined by the by-laws of the association, but the court found, from sufficient evidence, that it was the custom

of the association for the conveyancers to receive money advanced by the association, and after settling all liens and claims against the property to pay over the balance to the person obtaining the loan.   Custom and usage of the business in which an agent is engaged form part of his authority: 31 Cyc. 1330; Laussatt v. Lippincott, 6 S. & R. 386; Williams v. Getty, 31 Pa. 461; Brooke v. N. Y., Lake Erie & Western R. R. Co., 108 Pa. 529.   In accordance with this custom and usage, Friend drew the money on the check and paid the part of it due the borrowers.   He did not pay but embezzled the part of the money applicable to the payment of the ground rents and one of the two existing mortgages on the properties, and reported to the defendant association that its mortgage was the first lien on the real estate.   The procedure in the transaction, it will be observed, was in strict accordance with the custom and practice of the defendant association in making all its loans.   The orders in the two cases were issued respectively on August 6 and 7, 1912, but the bonds and mortgages to secure payment of the loan by the plaintiff to the defendant were not executed until September 30th following, thereby affording sufficient time for Friend to pay the existing claims against the properties before he took the securities for the defendant's loan.

Friend was manifestly acting in a dual capacity, and as said in Pepper v. Cairns, 133 Pa. 114, 120, we are required to look closely into the facts to discover in which capacity he did the fraudulent act.   It is true that the plaintiff was required to satisfy the existing claims against the property, but it is clear that the defendant did not intend to place the money in his hands for the purpose and permit him to use his pleasure in doing so.   Had such been the defendant's intention the check for the amount of the loan would have been made payable to the plaintiff and not drawn to the order of Friend, a member of its association and its agent, to settle liens and claims against the properties before he paid the bor-

rower his share of the loan secured by the mortgage to be given the defendant. It does not appear that the officers of the defendant association had such intimate relations with or knowledge of the plaintiff as would warrant the payment to him of the sum necessary to satisfy the ground rents and mortgage liens on the property, but the defendant's officers knew Friend, who had been in their service many years in the same capacity, and believed that they could trust him as their agent, as they had theretofore done in similar cases, to see that the rents and liens were removed and that their mortgage was the first lien on the premises. The condition on which the loan was made was that the existing claims against the property should be paid out of the fund obtained from the defendant so as to give the defendant the first lien on the real estate, and the officers of the association would certainly not have been justified in placing the money beyond their power to have the condition performed. As the learned chancellor aptly says: "The evidence is uncontradicted that the loan was made on a first mortgage. There could not be such a first mortgage, within the meaning of the term as used by all the parties, without the prior redemption and extinguishment of the ground rents. The lender was entitled to receive this extinguishment before it definitely accepted the mortgage. Its plain course, therefore, was to reserve the $1,800 in its hand until it received the extinguishment. When it gave the money to Friend it did what common prudence required it to do, namely, it entrusted its agent with the money which should be applied to the extinguishment of the rent and relied on his fidelity to his trust." The purpose to insure the payment of the existing mortgages and the extinguishment of the ground rents was accomplished by the defendant's treasurer making the check payable to Friend and not to the plaintiff to whom the orders were payable.

The powers and duties of Friend as the defendant's conveyancer were not in writing, and, therefore, he was

a competent witness to prove the extent of his authority. This, as we understand his testimony, is what he was permitted to do. He could not give his conclusions as to the fact of agency, but he could testify as to the facts and circumstances surrounding the transaction between him and his principal, leaving to the court and jury to determine, under the facts disclosed, whether or not he was the agent: 31 Cyc. 1652.

The cases of this court, cited by the appellant, are clearly distinguishable on their facts from the present cases, and hence do not rule them. In the present cases, the chancellor found that Friend was the agent of the defendant association for the purpose of distributing the amount of the loan to the proper parties under the custom established by the evidence. In Pepper v. Cairns, 133 Pa. 114, the trial court held as a matter of law that the defaulter was the agent for the borrower in the distribution of the money. In Sergeant v. Martin, 133 Pa. 122, the lender gave the agent the money without receiving any executed mortgage, and assumed that the agent was authorized to receive the money. In Reformed Presbyterian Church v. Livingston, 210 Pa. 536, the mortgagor received the check to his order and endorsed it over to the agent of both parties for the purpose of satisfying a prior lien. In Lipman v. Noblit, 194 Pa. 416, the court found as a fact that the defaulting agent, who had acted for both parties, retained the sum embezzled as the agent of the vendor. There was written evidence of the fact that he acted as the vendor's agent.

The decree in each case is affirmed.