**ROUTH v. FITZGIBBON et al.**

No. 7579—Opinion Filed Jan. 9, 1917.

(162 Pac. 702.)

(Syllabus by the Court.)

1. **Principal and Agent—Agency—Borrowing Money.**

Where a borrower by written power of attorney expressly makes an intermediary his agent to receive the money borrowed from the lender, and authorizes him to pay off all mortgages outstanding and constituting liens on the property agreed upon as security for the loan, the intermediary is the agent of the borrower.

2. **Same—Agent's Misappropriation—Loss.**

In such circumstances the loss occasioned by the agent's misappropriation of the funds without having discharged the incumbrances falls, not upon the lender, but upon the borrower, who is responsible for his agent's defalcations.

Error from District Court, Cherokee County; John H. Pitchford, Judge.

Proceeding between William H. Ford and others and Ada P. Barnett and others, consolidated with proceedings between Ida M. Fitzgibbon and William H. Ford and others. From that part of the decree canceling a note and mortgage given by Ford and wife to Avery L. Routh as guardian of Ada P. Barnett, a minor, Routh brings error. Reversed and remanded with instructions.

William T. Hutchings, Charles A. Moon and Bailey & Wyand, for plaintiff in error.

SHARP, J. The proceedings in error, as shown by the record, belong to that unfortunate class of cases in which one of two innocent parties must suffer from the fraud of a third, and it is also an illustration of the evils of the practice, so constantly condemned by the courts, but apparently so inveterate in business, of the same person being employed as agent by separate parties, whose interests are, or at any moment may become, adverse. The legal principles by which such controversies are to be settled are perfectly clear, but require much care in their application.

There is no dispute as to the material facts to which the law of the case must be applied. In September, 1913, Routh was the legal guardian of Ada P. Barnett, a minor. In the management of her estate, Routh was represented by Robert J. Boone, an attorney at law, who it appears had charge of loaning the funds of the minor's estate. At the time Boone also represented Ford in certain guardianship proceedings. Ford, being indebted to Ida M. Fitzgibbon, applied to Boone for a loan, principally for the purpose of paying off the Fitzgibbon loan; and on the 25th day of September, 1913, executed a power of attorney in Boone's favor, wherein the latter was designated as his agent to secure a loan in the sum of $1,500. The Cherokee county lands, offered as security, were at the time subject to the Fitzgibbon loan. In the power of attorney, Ford, among other things, agreed to pay all expenses for negotiating and closing said loan, procuring abstract, payment of taxes, including mortgage tax, recording fees of mortgage, and all instruments necessary to the perfection of Ford's title, and further authorized Boone "to make settlement of all outstanding mortgages or indebtedness on said property." Said power of attorney further provided that said Boone—

"is hereby specially authorized to sign and deliver any receipt for said money, or to indorse any check, draft or other evidence of debt in my name, as fully, and to all intents and purposes as I could do; that after receiving said money from the lender, to pay off all mortgages, liens, expenses in procuring the loan, and to pay himself for such moneys as he had advanced in the matter of closing or negotiating said loan, and such sums as he has advanced to me personally, or for my use and benefit, and that after paying off the items herein described, he is to pay over to me any balance that there may be."

In pursuance of the foregoing authority Boone, with the tacit consent of Routh, drew on the latter's guardianship account at the First National Bank of Muskogee, the sum of $1,500, the amount of the Ford loan, and payment being made by the bank, Boone appropriated the same to his own use. In the settlement of the guardianship accounts of Routh, the county court of Wagoner county surcharged Routh with the aforesaid loan, which judgment was, on appeal to the district court of said county, affirmed. The amount of the note having been paid by Routh to T. C. Harrill, his successor in office, the Ford note was, by order of court, indorsed and delivered to Routh in his individual right.

The testimony of Ford, the victim of Boone's duplicity, amply supports the claim, and the only point urged, that Boone at the time of the embezzlement was Ford's agent. The testimony was to the effect that Boone should pay off the Fitzgibbon loan, and, after deducting his fee, pay the balance over to him, Ford. Being asked the question:

"What was to be done with the other money, when he said there was to be some overplus?"

--he answered:

"He had a paper there that I owed that Fitzgibbon woman, $1,130 that I owed. He

was going to take up that loan. If he taken up that loan, what was over, of course it would come to me, outside of his fee."

Other questions and answers are:

"Q. Now what was he going to do with the money when he got it? A. Well, I was getting the money to pay off the other loan. Q. And Mr. Boone, when he got that loan approved, was to take the $1,500 and pay off that mortgage and give you the balance? A. Why, of course I was getting the balance as far as that was concerned. Q. You did not think Boone was going to pay $1,500 on a mortgage and let the Ford mortgage stand on the land too—you did not expect the $1,500 in money? A. Certainly not. I expected when he had the mortgage, as Mr. Hill had already sent his note in to him, for him to take it up."

It may be here observed that Hill was Mrs. Fitzgibbon's agent in the collection of her note. In the trial below, the question of Mrs. Fitzgibbon's liability on account of her agent having intrusted the note to Boone was not urged, and of course cannot at this time be considered. It was stated by the trial court, at the conclusion of the evidence:

"And the evidence shows clearly that the purpose of this loan was to take up these mortgages, and it was understood that Boone was the attorney for Ford for the purpose of taking up the Ford loan. I think the proof establishes that fact."

In the decree, inter alia, it was said that the note and mortgage of the Fords to Routh as guardian were delivered to Boone— "with the agreement and understanding that said Robert J. Boone should pay said money to Ida M. Fitzgibbon in a sum sufficient to pay her liens on said property and to retain for himself the sum of $108, the amount which was agreed to be paid to him by said William H. Ford and Nona Ford, his wife, for procuring the said loan, and the remainder of said money, if any, to be paid to the said William H. Ford and his wife, Nona Ford, by the said Robert J. Boone."

The court further found that, though the said Boone obtained said sum of $1,500 from the guardian's account, yet, after receiving the same, he neglected, failed, and refused to pay off the Fitzgibbon loan, and also neglected, failed, and refused to pay any portion of the loan to the Fords, but, on the other hand, appropriated the same to his own personal use and benefit.

In order to procure a loan secured by a first mortgage on his land, the duty devolved upon Ford to pay off and discharge his prior incumbrance. Englemann v. Reause, 61 Mich.

395, 28 N. W. 149; Knox County v. Goggin, 105 Mo. 182, 16 S. W. 684; Pepper v. Cairns, 133 Pa. 114, 19 Atl. 336, 7 L. R. A. 750, 19 Am. St. Rep. 625. There is nothing to show that Boone had any instructions from Routh, acting as guardian, in respect to the payment of the outstanding mortgage. Had there been, a different conclusion might follow, as in such case there is authority, supported by good reason, to the effect that the intermediary is the agent of the lender. The power of attorney from Ford to Boone was such as specially to authorize the latter to pay off and discharge the Fitzgibbon loan; and his failure to do so cannot be charged to Routh, but to Ford, his principal, who had vested him with definite authority to do the very act, the neglect of which brought about and is the subject of the present controversy.

In its material aspects the case is very similar to that before the court in Owings v. Howington et al., 31 Okla. 651, 124 Pac. 1058. There, as here, an unworthy agent was employed to procure a loan and to receive the money for the borrower. The agent negotiated the loan through a third person, as by the terms of his appointment he was authorized to do, and received the money thereon, but failed to turn it over to his principal; and it was said that in such case the principal must suffer the loss, rather than the third person, the court saying the rule seemed to be well settled that, where a borrower, by written application or otherwise, expressly makes an intermediary of his agent, for the purpose of negotiating a loan, and receiving the proceeds, the intermediary is the agent of the borrower and not of the lender. Such is the law by which the rights of the respective parties are to be determined. The uncontradicted evidence conclusively establishes that Boone, by special employment, was the agent of Ford, to do the very act which he failed to perform; that he was to be paid by Ford for procuring the loan and representing him in the premises. The findings of the court are clearly supported by the evidence, but in applying the law to the facts found, and in ordering canceled the Ford note and mortgage, because of the failure of Boone to faithfully observe his trust, it is obvious that the trial court erred.

The judgment, canceling the note and mortgage given by Ford and wife to Routh. is reversed, and the cause remanded, with instructions to enter judgment in favor of Routh on his note, and for the foreclosure of his mortgage.

All the Justices concur.