[Land Mortgage Investment Agency Co. v. Preston.]

# Land Mortgage Investment Agency Co. v. Preston.

*Bill in Equity to Remove Cloud on Title.*

1. *Person dealing with agent within scope of his authority, not liable for his defaults.*—The lender of money is authorized to pay it to the person or agent authorized by the borrower to receive it, and having done so, the lender's responsibility ceases, and a loss of the money, caused by the absconding of the agent, cannot be visited on the lender.            ,
2. *Burden of proof on party holding the affirmative.*—The burden of proving a disputed fact is in all cases on the party affirming its existence, and claiming to derive right and benefit from it; it is on the lender of money to prove the execution of a paper relied upon as giving authority to the borrower's agent to receive and pay over the money borrowed.
3. *Lender responsible for act of his agent in paying over money.* Where the lender had money deposited with its broker, who acted as agent of the borrower in making the application for the loan, and after the approval and acceptance of the loan the lender authorized such broker to pay the money over to the borrower out of the money deposited for that purpose, the broker was the agent of the lender in paying over the money, and the lender is responsible for the act of the agent in paying over the money to one not authorized to receive it, and who failed to deliver it to the borrower.
4. *Evidence held not sufficient to prove execution of instrument.* On the issue as to whether a borrower executed an alleged paper authorizing his agent to receive money, the borrower testified he did not execute the paper, nine witnesses, not experts, but more or less familiar with the borrower's handwriting, testified that in their opinion the signature was not genuine, eight witnesses, some of whom were experts, testified by comparison that it was, in their opinion, not genuine, and some of them, that the signature was the same handwriting as other parts of the paper, written by the alleged agent; and opposed to this, the lender introduced eight witnesses, who were experts, and who testifying by comparison of handwriting, gave it as their opinion that the signature was genuine: *Held*, that, with the burden of proof on the lender to show the genuineness of the paper, he had not discharged it by a preponderance of evidence.

APPEAL from Dale Chancery Court.
Tried before Hon. JERE N. WILLIAMS.
The case is stated in the opinion.

A. T. BORDERS, and HUGH NELSON, for appellants.

H. L. MARTIN, and SOLLIE & KIRKLAND, contra.

PER CURIAM.—The Loan Co. of Alabama, a cor-
poration under the laws of this State, located at Selma,
which will be referred to as the Alabama company, was
engaged as a broker or middle man negotiating loans
on real estate and mortgages thereon, and in acting as
such for resident and non-resident persons and cor-
porations in and about lending money, receiving
reasonable commissions for its services, such as were
authorized by its charter, to be paid by the lender or
borrower, as might be agreed on in each particular
case. Among the companies from which it sometimes
obtained money in placing loans was the appellant
company, the Land Mortgage Investment and Agency
Company of America, Limited, of London, England,
hereafter referred to as the London company. In
conducting its business, the Alabama company had its
correspondents in different counties of this state,
who sought or ascertained parties desiring to secure
loans on their farm lands, especially, and who acted as
broker between the borrower and the Alabama com-
pany, and among these was J. W. V. Manghen, of Ozark,
who acted in this capacity in Dale county. The Alabama
company acted, in securing the loan in this case, not for
the London company, as it contends, but as agent for the
borrower, Paul H. Preston, and the said Manghen, as is
the contention of the appellant companies, did not act
as the agent of either of said companies, but for the
borrower, Preston. Neither the borrower, Manghen,
nor the Alabama company, as the evidence satisfactor-
ily shows, at the time of the application for said loan,
nor during the preliminary negotiations therefor, knew
with what person or with what loan company, as lender,
the loan, if effected, would be placed. Neither in that
time, ever had any correspondence or negotiation with
the London company about the loan, and the latter
company knew nothing about the proposed loan, and the
proposed borrower, until all the papers had been pre-

pared and submitted to it to secure the loan thereon. Preston executed his notes to the London company for the principal loaned, falling due in different years during the period of the loan, and for the annual interest accruing thereon, and a mortgage on his lands to secure the payment of the same, properly executed by himself and wife to pass the homestead. He also executed to the Alabama company a second and similiar mortgage on the same lands, with five notes therefor, to secure the payment of $45, its compensation for negotiating said loan for him, and he agreed to pay to said Manghen $10 for his services to him in and about the placing of said loan. When the money borrowered was paid over by the Alabama company to Manghen for the appellee, as is not denied , instead of paying it to him, Manghen appropriated it to himself and ran away, and the borrower never received any part of it. Said mortgages became due and foreclosable, and on default in their payment, they were foreclosed under the power in them, and R. M. Nelson became the purchaser at the amount that was due on them, and deeds were made to him by the mortgagees.

The said Preston filed this bill to remove said mortgages and deeds as a cloud on his title to said lands, of which he is in possession, on the ground, in short, that he has never received the loan or any part thereof; that said Manghen was not his agent in procuring said loan, but the agent of said loan companies, to which he gave no authority to pay the money to said Manghen for him. The respondents allege that Manghen was the agent of complainant to receive said money, and if he misappropriated it, it was not the fault of respondents, but the misfortune of complainant for which respondents are not liable.

In the cases of *Edinburgh-American Land Mortgage Co. v. Peeples,* 102 Ala. 241, and *American Mortgage Co. of Scotland, Limited, v. King,* 105 Ala. 358, we considered and passed on the liabilities of the respective loan companies, on account of the embezzlement of this same Manghen of the loans effected by him for Peeples and King in those cases. In each of those cases, it was shown that the applications of the borrowers contained the provision: "I agree to pay J. W. V. Manghen, as my attorney, a reasonable fee for taking this application, conducting correspondence, and making ample abstract of

title to my land, and in securing and paying over the same." We held that the lender was authorized to pay the money to the persons or agents authorized by the complainants to receive it, and having done so, its responsibility ceased, and the loss could not be visited on the lender.

The alleged application in the present case contains this identical agreement, except that the reasonable fee the lender agreed to pay Manghen is named at $10. This agreement is marked C, as an exhibit to the deposition of W. R. Nelson, a witness for respondents. In addition, there are exhibits A, B and D to said deposition introduced by respondents, each purporting to be signed by the borrower, Preston, in and about procuring said loan. The complainant objected to the introduction of each of these papers, on the grounds that they were not self-proving, because their execution by complainant had not been proved, and because they were not competent evidence. A purports to be the oath of the appellee to an application to the Alabama company to procure for him a loan of $500 on his said lands, representing himself as their owner, stating that the statements of his indebtedness as made to his agent, Manghen, and the other statements therein, were true. B, to be a contract with the Alabama company by the appellee, agreeing to pay them certain sums annually if the company succeeeded in 30 days in procuring the loan. C, to be an agreement of appellee with said Manghen, agreeing to pay him as attorney of appellee a fee of $10 for taking the application for the loan, conducting the correspondence and making a complete abstract of title to his lands and receiving and paying over the money and all such work in connection with the loan, and D to be an affidavit by the appellee, reciting the giving of his mortgage to the London company; that his abstract of title was correct; that he had a perfect title, free from lien or incumbrance, &c.

Without the contract, marked exhibit C, there would not appear to be any authority for the Alabama company to pay over the money to Manghen, and if said contract is not a forgery, but was signed by the borrower, it would follow, he will have to share the same misfortune that befell Peeples and King in the other cases. The only question we have for decision, therefore, is as to the Alabama company, whether said contract is a forgery or not. The burden of proving the execution of said con-

tract, and the other exhibits referred to, is on the respondents, since they set them up as a defense. The burden of proving a disputed fact is, in all cases, upon the party affirming its existence, and claiming to derive right and benefit from it.—3 Brick. Dig. 433, §388.

A great many witnesses were examined on each side, and the chancellor rendered his final decree granting the prayer of the bill, and declaring the mortgages on the complainant's land to be of no effect, and ordering their cancellation.

The evidence is sufficiently clear, not to leave it in doubt, that Manghen was not the agent of either of said companies, but was the agent of complainant for procuring the loan, for which complainant agreed to pay him the sum of $10. The London company never heard of Manghen or the complainant before it was asked to make the loan by the Alabama company, on the papers passed and presented by that company. He was the correspondent, merely, of the latter company in and about such loans as he might be engaged to make by parties in Dale county desiring them, and he looked to them, and not to the Alabama company or the company that might lend the money, for his compensation. The papers marked A, B, C and D were such as was usual in and about procuring such a loan by any borrower.

It is averred in the bill that complainant, "being desirous of obtaining a loan, and seeing an advertisement of said Manghen in the Ozark Star, did make application to him for a loan of money of $250.90 ($500); that said application was made to the said J. W. V. Manghen, as the agent of said Loan Company of Alabama," and as a result, he executed the two mortgages in question. He further states, "that acting upon his faith and confidence in said Loan Company of Alabama and its agent, J. W. V. Manghen," he executed and delivered said mortgages. He says in his first deposition, "I never agreed to pay Manghen anything. I see no contract appended to my bill, wherein I agreed to pay Manghen anything. I do not remember all that was comprised in the application for the loan. The reason Manghen was not my agent was, that he represented himself to me as the agent of the loan companies. I do not know why Manghen did not read them to me. I think I read all the papers myself that I signed. I will swear that I did agree to

give Manghen ten dollars to negotiate the loan for me."
Again, he states, "I did not in this matter correspond
directly with the Loan Company of Alabama.    *   *   *
I don't know about the application and abstract.   He
(Manghen) took my papers and said he could get the
money on them.   I did not agree with him for him to
conduct any correspondence.   I don't know about the
correspondence.   I did not make any agreement with
him at all, except that he was to take the papers and get
the money on them.   I do not know whether he took my
application.   *   *   *   If there was an application made,
I did not authorize Manghen to make it. I did not author-
ize any one to do any correspondence for me in respect
to said loan."   He distinctly swears he did not sign any
paper authorizing the money to be paid to Manghen.   In
one of his depositions (for he was examined three times),
he states, "I did sign the ten promissory notes attached
to the deposition of J. S. Bennett in this case.   I did not
sign the notes attached to the deposition of W. R. Nelson
in this case.   I signed only one mortgage and set of
notes."   This was contradictory of the allegations of his
bill.   On another examination, he asked to correct that
statement, and said he signed all the notes and both
mortgages.   He further stated as a reason for his mis-
take, that he did not understand the question put to
him, and was drinking some, and was not exactly at
himself.

These averments in his bill, and these answers to in-
terrogatories propounded, tend to show that complain-
ant did make application for this loan in some shape,
either verbal or written, and that he is confused and in-
definite in his recollection of what really did occur.

The complainant introduced much proof to show that
exhibits A, B, C and D were not genuine, and the re-
spondents examined many to show that they were.   Of
those examined by complainant, there were nine, not
claimed to be experts, but who swore they had seen com-
plainant write, and were more or less acquainted with
his handwriting, who expressed the opinion that the sig-
natures to said exhibits were not complainant's.   He in-
troduced eight others, who he claims were experts, who
testified from comparison of handwritings, that the sig-
natures of complainant to the exhibits were not his.
Some of these, it may be, have not shown themselves to

be experts, in the higher sense, that by study, occupation and habit they become skillful in marking and distinguishing the characteristics of handwritings, genuine and spurious.—*Moon v. Crowder,* 72 Ala. 79, 88; *Griffin v. State,* 90 Ala. 596; Rogers on Exp. Test. §129. But their testimony is in without objection for what it may be worth. Some of them were competent as experts. All of them gave their opinions adversely to the genuineness of complainant's signature to the said exhibits. On the other hand, respondents introduced eight witnesses, whose occupations and business rendered each competent to speak as an expert in handwriting, and they each testified to the genuineness of the signatures of the complainant to said papers. To sum up: The complainant swears positively he did not sign the contract marked exhibit C, nor any one of the other exhibits, marked A, B, and D. Seventeen other witnesses for complainant, who had seen him write, swear the signatures are not his, and eight others swearing by comparison and as experts, say that they are not genuine. Roman, an expert, examined by defendants, and whose deposition was introduced by complainant, gives it as his opinion that the party who signed the notes (admitted to have been signed by complainant), did not sign the exhibits. It should be stated that the signatures to these papers, purport to have been witnessed by said Manghen, and the blanks in them were filled by him, and the witnesses expressing their opinion on the subject, say that one and the same man did the writing, and if Manghen's signatures to the papers as a witness were signed by him, which is not denied, he signed the name of complainant to said papers. As an off-set to this, we have the opinion of the eight expert witnesses of defendants swearing from comparison, that the complainant's signatures to the contract, exhibit C, and the other exhibits, are genuine. We must conclude as did the chancellor, with the burden on respondents to show the genuineness of these papers, that they have not discharged it by a preponderance of the evidence.

When the loan was accepted by said company, which had money deposited in a bank in Selma for investment for it by the Alabama company, it authorized the latter company to pay the money over to the borrower out of moneys already deposited for such purposes, and the

[Parker v. Boutwell & Son.]

Alabama company caused the money to be paid to said Manghen for the complainant. In this transaction of paying over the money to the borrower after the approval and acceptance of the loan by the London company, the Alabama company represented the lending company. That company, as has been stated, had no dealings with the complainant, except through the Alabama company.

In the absence of authority so to do from the complainant, the Alabama company had no right to pay the loan to said Manghen. It was also the duty of the London company, when it accepted the loan, to transmit the money to the borrower. If it attempted to do so through its agent for the purpose, the Alabama company, which company paid the money borrowed to Manghen, who was not the agent of the borrower to receive it, and he made way with it, the London company must suffer through the default of its said paying agent, the Alabama company. The complainant surely cannot be made to lose the money he attempted to borrow, through the negligence of either of said companies.

Affirmed.

HARALSON, J., not sitting.