**HOME SAVINGS & LOAN ASS'N v. ROUNDS-PORTER LBR. CO. et al.**

No. 9764—Opinion Filed Jan. 8, 1921.

Rehearing Denied Feb. 8, 1921.

(Syllabus by the Court.)

**1. Principal and Agent—Loans—Agent of Loan Company or Borrower.**

Where a loan association appoints an agent to receive applications for loans with in-

structions as to the signature and asknowl-
edgment of the note and mortgage to be
executed by the borrower, and also as to the
abstract of title, the payment of the mort-
gage tax, and the proper assignment, etc.,
of certificate of stock by the borrower, the
person so appointed does not cease to be
the agent of the association for the reason
that the borrower in making the application
for the loan signs an instrument appointing
such agent his agent; but where the loan is
approved and check issued payable to such
agent and the borrower jointly and delivered
to the agent and the borrower thereafter
indorses the check and leaves the same in
the hands of the agent with instructions as
to the disbursement of the proceeds of the
check, the party so designated by the loan
association then becomes the agent of the
borrower and is without authority to bind
the association by any promise to pay to a
third person a claim against the borrower.

**2. Appeal and Error — Time for Proceedings.**

Under Session Laws 1910-11, ch. 18, par. 1,
proceedings in error in the Supreme Court
must be commenced within six months from
the date of the rendition of the judgment
appealed from by filing in this court a peti-
tion in error.

**3. Same — "Filing" Petition in Error — Effect of Mailing.**

Enclosing a petition in error in an en-
velope addressed to the clerk of this court,
with postage prepaid, and depositing the
same in the United States mail within time
to reach the office of the clerk of this court,
is not a compliance with the statute.

Error from District Court, Tulsa County;
N. E. McNeill, Judge.

Actions by the Home Savings & Loan As-
sociation against J. W. Kennedy on note and
mortgage and by the Rounds-Porter Lumber
Company against J. W. Kennedy, the Home
Savings & Loan Association, and others on
debt for material. Actions consolidated, and
judgment for the loan association against
Kennedy, and for the lumber company
against Kennedy and the loan association,
and the latter brings error. Reversed, and
motion to substitute denied.

J. T. Shipman, for plaintiff in error.

P. L. Thurman, for defendant in error
Rounds-Porter Lumber Company.

Biddison & Biddison, for defendant in er-
ror J. W. Kennedy.

PITCHFORD, J. The Home Savings &
Loan Association, with its principal place of
business at Bartlesville, Okla., loaned to J.
W. Kennedy $1,200. In order to borrow this
sum, Kennedy subscribed for and purchased
12 shares of the capital stock of the associa-
tion. A certificate was issued to him evi-

dencing said shares. On the 15th day of
May, 1914, there was executed by Kennedy a
note for said sum, and to secure payment of
said sum he assigned and pledged said shares
of stock as collateral security; also executed
a mortgage on lot 18, in block 2, of the city
of Tulsa. The loan was negotiated through
A. M. Hassler, of Tulsa, Okla., the agent of
the loan association.

In the application for the loan, the bor-
rower, Kennedy, appointed Hassler as his
agent and agreed, as compensation for his
services in negotiating the loan, that the
sum of $120 be deducted from the loan, also
that he would furnish an abstract showing
a perfect title to the property to be mort-
gaged, and authorized the loan company to
remit to Hassler the money on said loan for
disbursement. The mortgage covering the
real estate was acknowledged and recorded
on the 21st day of May 1914. Thereafter
the loan company forwarded its check to
Hassler, the same being made payable to A.
M. Hassler and J. W. Kennedy.

The Rounds-Porter Lumber Company had
furnished lumber to the owners of the mort-
gaged premises prior to the purchase of the
same by Mr. Kennedy. On June 22, 1914,
C. O. Arnold, representing the Rounds-Porter
Lumber Company, in company with J. W.
Kennedy, went to the office of A. M. Hassler
and there, in the presence of Mr. Hassler,
Kennedy, in writing, agreed to pay the ac-
count of the Rounds-Porter Lumber Com-
pany against Sliger and Holmes, the former
owners of the property. On the 3rd of
August, 1915, the loan association com-
menced its action against J. W. Kennedy to
recover judgment upon the note for $1,200
and for the foreclosure of the mortgage.
Kennedy admitted the execution of the note
and the mortgage, but defended on the
ground that the loan was never fully con-
summated; that he never received all the
money and that the plaintiff was not entitled
to the foreclosure of its mortgage.

On the 19th day of August, 1915, the
Rounds-Porter Lumber Company commenced
its action against Kennedy, Sliger, Holmes
and the Home Savings & Loan Association
and alleged that on the 2nd day of March,
1914, the lumber company made a verbal
contract with defendants Sliger and Holmes
to furnish lumber and other building ma-
terial to build a house upon lot 18, in block
2, in the city of Tulsa, and that between the
2d day of March and the 22d day of April
1914, delivered to Sliger and Holmes lumber
and other building material of the value of
$626.35. That at that time Sliger and
Holmes owned the legal title to the lot, which
they afterwards transferred to Kennedy sub-

ject to the lien of the lumber company; that Kennedy assumed said indebtedness of $626.35 and agreed in writing to pay the same. It was further alleged that concurrently with the sale and transfer of the premises to Kennedy the loan was negotiated from the defendant Home Savings & Loan Association. It was further alleged that at the time of the execution of the mortgage by Kennedy and the acceptance thereof by the loan association the Rounds-Porter Lumber Company had a prior lien upon the premises for $626.35, which fact was well known to the loan association, and that it was thereupon agreed by and between the Rounds-Porter Lumber Company, J. W. Kennedy, and the loan association that, in order to discharge the lien of the Rounds-Porter Lumber Company, Kennedy would assign and set over to the lumber company out of said loan the sum of $626.35, and thereupon Kennedy did assign and set over to plaintiff said sum out of said loan, then in the hands of the loan association, and that the association then agreed that it would accept such assignment, and did accept such assignment, and agreed to pay for and discharge the claim and lien of the Rounds-Porter Lumber Company. Judgment was prayed against Kennedy, Sliger, Holmes, and the loan association for $626.35, with interest thereon, together with the attorney's fee of $100.

The cause wherein the Home Savings & Loan Association was plaintiff and J. W. Kennedy was defendant was consolidated with the cause wherein Rounds-Porter Lumber Company was plaintiff and Sliger, Holmes, Kennedy, and the loan association were defendants. The cause so consolidated came on for trial in the district court of Tulsa county on the 12th day of September, 1917.

In the case of the loan association against Kennedy the jury returned a verdict in favor of the plaintiff for $1,200. In the case of the Rounds-Porter Lumber Company against the loan association the jury returned a verdict for the plaintiff in the sum of $626.35 and $50 attorney's fees. The loan association filed motion for a new trial. The assignments of error relied upon are that the court erred in overruling plaintiff in error's motion for new trial; the court erred in giving instructions Nos. 2, 5, and 7; and the court erred in accepting the verdicts of the jury as they were rendered; and the court erred in its constructions of the verdicts.

The first error relied upon by the plaintiff in error and discussed is as to the amount of recovery. It is claimed by the plaintiff in error that it was entitled to the interest on the loan from October 15, 1914, less the credit of $15, interest paid to January 26, 1915, whereas the court allowed interest only from August 1, 1915. The evidence is undisputed that the payments of the loan were to be $24 monthly, and that five monthly payments were made and one payment of $15 paid January 26, 1915. The date of the note was May 15, 1914. From May 15th to October 15, 1914, the installments provided for in the loan were paid, amounting to $120. The withdrawal value of the stock carried by Kennedy seems to have been valued at $36.75. The interest for the five months at 10 per cent. during that time would have been $24, whereas the borrower had paid $120. It is not necessary to differentiate as to the items going to make the difference between $120, the amount paid, and $24, the interest at 10 per cent., as the loan being made for six years, and the interest being paid annually, then at the end of six years the interest would amount to $720, which, added to $1,200, would make $1,920. The payment of $24 a month, provided for in the loan, at the end of six years would amount to $1,728, making a difference of $192, being less than if the interest had been paid annually. Therefore, when default was made on October 15, 1914, Kennedy was entitled to the withdrawal value of his stock, $36, together with the interest, $15, paid January 26, 1915, which would pay the interest to March 18, 1915; therefore, the loan association would be entitled to the interest from the last named date at 10 per cent. instead of from August 1st, as instructed by the trial court, the difference being $43.60, which sum should be added to the judgment in favor of the association against Kennedy.

The serious question involved in this case is as to the liability of the loan association to the Rounds-Porter Lumber Company.

It is claimed by the latter that on the 22d day of June, J. W. Kennedy assumed the indebtedness for $626.35, being the amount due from the former owners of the mortgaged premises, and agreed in writing to pay the same; that this transaction occurred in the office of A. M. Hassler, agent, as claimed by Rounds and Porter, of the loan association, and that Kennedy assigned to the Rounds-Porter Company this amount in the check issued to Kennedy covering the loan, and that, Hassler having promised to pay this sum out of the check then in his possession, this was equivalent to a promise by the loan association, as Hassler was their agent and was clothed with authority to bind the association in this transaction. At this time the check for the loan had been issued by the loan association and had been forwarded to and was in the possession of Hassler, the

same being payable to A. M. Hassler and J. W. Kennedy.

In the presence of Arnold, the manager of the Rounds-Porter Lumber Company, Kennedy indorsed the check and authorized Hassler to pay, not only the claim of the Rounds-Porter Lumber Company, but also other claims. It is not alleged that this promise on the part of Hassler was in writing, but should we hold that under the circumstances Hassler was the agent of the loan association and could bind the latter by this agreement, the evidence should be clear, positive, and unequivocal that the promise was made.

C. O. Arnold testified that on the date of the purported acceptance by Hassler he got up a statement of the account of the Rounds-Porter Lumber Company, and went over to Mr. Kennedy and got Mr. Kennedy's acceptance and had it sworn to in Mr. Hassler's office. This question was asked Mr. Arnold:

· "Q. Mr. Arnold, at the time you and Kennedy were up in this loan company's office, did Mr. Kennedy, in your presence and in the presence of the company's agent, authorize Mr. Hassler to pay this claim out of this loan? A. He did."

The witness further testified that he was at Hassler's office at that time for the purpose of collecting the claim due the Rounds-Porter Lumber Company, and, further, that the time for filing a materialman's lien had not expired.

The only other witness who testified concerning the transaction in Hassler's office was J. W. Kennedy. Relative to the agreement on the part of Hassler to pay the claim of the Rounds-Porter Lumber Company, Mr. Kennedy testified as follows:

"Q. Do you remember whether at the time you and Mr. Arnold were up there talking whether the loan company was ready to pay the money or not at that time? A. Yes, sir. Q. You think the money was there? A. Yes, sir; I know it was. Q. Did you give Mr. Arnold an order and assignment of anything of that kind to the loan company to pay him this claim? A. Yes, sir—I signed up for that lumber bill myself; yes, sir, agreed to pay it or to have it paid, and I knew it would be paid, for Mr. Hassler agreed to pay it; he said he would pay it. Q. During that conversation you had did you instruct Mr. Hassler to pay this bill out of that twelve hundred dollar loan? A. I did; yes, sir. Q. What did Mr. Hassler say? A. Well, I don't recollect really the words, something there said to—he said, as well as I recollect, we would just wait and we would get another loan through and we would pay it out of that, because he had some other bills to pay. Q. Did he agree to pay it? A. Mr. Hassler? Q. Yes. A. Yes, sir; he agreed to pay it.

Q. You spoke about another loan, Mr. Kennedy; was you negotiating another loan at the same time? A. Yes, sir. Q. Was the loan ever made? A. No, sir."

Kennedy further testified that he had agreed on a former occasion to pay the lumber bill and that was why Mr. Arnold was with him in Hassler's office.

It is contended by Rounds and Porter that, relying on the promise on the part of Hassler to pay the claim, they allowed the time to elapse in which to file their materialman's lien. This condition is hardly consistent with the facts in the case. The alleged promise on the part of Hassler was on the 22d day of June. It appears that Rounds and Porter had four months from the 22d day of April in which to file their lien. On the 22d day of June, when Arnold and Kennedy were in Hassler's office, the check had been received by Hassler. This check was made payable to Hassler and Kennedy jointly. Arnold and Kennedy had come to Hassler's office for the purpose of collecting the amount due Rounds and Porter. At that time the loan had been reported. The abstract had been furnished the loan association, showing that the mortgaged premises were free of all liens, the mortgage had been recorded, and the check was in the hands of Hassler. The Rounds-Porter Lumber Company knew this fact, or should have known it. We are to presume that they were possessed of sufficient business experience to know that the association would not issue and send out the check until after the company had passed on the sufficiency of the security. It is strenuously contended, however, that the letter of instruction furnished Hassler, its agent, by the loan association authorized the former to bind the association by this promise. The letter of instruction is as follows:

"In closing this loan you will see that the following instructions are complied with: Have the note signed by J. W. Kennedy. Have the copy of the note in mortgage signed in the same way. Have the mortgage properly acknowledged before a notary public and be sure that the notary fills in the date at each blank, and that the seal is attached, and the date of the expiration of commission plainly written. Have the deduction slip signed by the borrower. Have the insurance agreement signed by the borrower. Have the certificate of stock properly assigned and signature witnesses. Furnish $1,200.00 fire insurance with the mortgage clause attached. Furnish $1,200.00 tornado insurance with the mortgage clause attached. See that the attorney's requirements are all complied with. Bring the abstract to date and have the same properly certified to, showing mortgage tax to have been paid, and have the abstracter certify as to personal taxes which might become a lien against the property."

The foregoing letter of instruction shows upon its face that all the conditions, therein expressed, were to be precedent to the issuance of the check; however, there is nothing in the evidence indicating that Rounds and Porter, at the time of the alleged promise on the part of Hassler to pay the claim, had any knowledge of the above letter of instruction. Mr. Arnold, the agent of Rounds and Porter, was present when Kennedy indorsed the check and instructed Hassler to pay out the proceeds of the same. The following conclusion may be deduced from the evidence: First, that A. M. Hassler represented the loan association as agent, and that the application signed by Kennedy, wherein Hassler was appointed agent to negotiate the loan and authorizing Hassler to receive the check, and agreeing to pay him a commission for securing the loan, did not have the effect to make Hassler his agent and not the agent of the plaintiff in error. We feel justified in assuming that Kennedy simply signed an application required of anyone desiring to borrow money from the association; that Hassler was the agent of the association at the time the check was received by him, in Tulsa, Okla., and that he continued to act as such agent until J. W. Kennedy indorsed the check and delivered the same back to Hassler. Thereafter, Hassler, in the disbursement of the proceeds of the check, became the agent of Kennedy and was without authority to bind the loan association by any assumption or by any promise to pay out of the proceeds the claim of the Rounds-Porter Lumber Company.

We have not been favored with any decisions directly in point, nor have we been able to find any; however, the case of Henken v. Schwicker, 174 N. Y. 298, is somewhat analogous to the case at bar. In the New York case, the facts were substantially as follows: The defendant was the owner of certain lands subject to three mortgages for $1,600, $1,000, and $400, respectively, which were held by one Baker. At that time defendant was about to purchase a farm upon which he wanted to borrow $1,000. He applied to one Dreher, a real estate agent and broker, for two loans of $1,000 and $3,200, respectively; the first to be secured by mortgage upon the farm about to be purchased, and the second by first mortgage upon the premises described in the complaint, out of the proceeds of which the three existing mortgages were to be paid off and discharged and Dreher, the broker, was to be paid a commission of $200. The broker applied to the plaintiff for the loan. The latter viewed the premises and, being satisfied with the security, said that he would grant the loan if it was to be a first mortgage.

Upon receiving assurances from the broker that it would be a first mortgage, the plaintiff signed and delivered his check to Dreher payable to his order. Dreher indorsed the check and deposited same in the bank to his own account. At this juncture, the defendant went to the office of Dreher to ascertain if he had the money on the loans, and ascertained that the latter had received the money on the loans. The defendant then signed the bond and mortgage. The question then arose as to the payment of the prior mortgages. Dreher testified that the defendant told him to pay the prior mortgage, and the latter did not deny it. Dreher took the mortgage in suit, had it recorded, and later delivered the bond and mortgage to the plaintiff. The prior liens were not paid by Dreher. Dreher misappropriated the funds. Upon the trial of the cause, the main question before the court was: Whom did Dreher represent at the time when he misappropriated the proceeds of the check? It was, therefore, held that in the first instances the broker represented the defendant alone, that is, he was the defendant's agent to procure the loan; that the plaintiff having approved of the application for the loan and executed the check to Dreher payable to his own order, the defendant not having at that time executed the bond and mortgage to secure the loan, the plaintiff in giving Dreher the check clearly made the latter his agent. Had Dreher defaulted, the loss would have been that of the plaintiff. When the defendant ascertained from Dreher that the check had been received, the bond and mortgage were delivered by the defendant to Dreher with the instructions to Dreher to pay off the prior liens.

The court in deciding the case said:

"Had there been no prior liens to discharge, the defendant would have received the money on the loan and that would have ended the transaction so far as he was concerned. But there were prior liens to discharge, and the defendant, instead of making arrangements to do this himself, or having it done in his presence, either permitted or requested Dreher to do it. As the mortgage to the plaintiff was, concededly, to be a first mortgage, it was clearly the duty of the defendant to see that the prior liens were paid out of the proceeds of the loan, and when the latter acquiesced in Dreher's retention thereof for that avowed purpose, it amounted to an implied, if not an express, delegation of authority to Dreher to do that which it was the defendant's duty to do."

In the case of Lipman v. Noblit, 194 Pa. 416, the vendor of real estate was required to pay off a mortgage on the land before he could demand the purchase money. He failed to do so, and the vendee was ready to pay the

purchase money, and it was arranged between the two parties that the vendee should take the deed and his attorney should retain the amount of the mortgage until it should be discharged, and then pay the money to the vendor. The attorney embezzled the money, and in an action by the vendor against the vendee for the purchase money it was held that the defendant's attorney was the agent of the vendor, because the vendee had completed his part of the transaction, but the vendor had not, and the money was being held until he had performed his duty of discharging his incumbrance upon the land.

So, in the instant case, the loan association had completed its part of the transaction when the check had been issued payable to Hassler and Kennedy, jointly, and had been received by Hassler and indorsed by Kennedy with instructions by the latter as to the disbursement of the proceeds.

As shedding some additional light upon the question of agency, see Land Mortgage Investment Agency v. Preston, 119 Ala. 290, and Edinburg American Land Mortgage Company v. Peoples, 102 Ala. 241. In view of our conclusions in the premises, it is not necessary to pass upon the remaining errors assigned. The judgment rendered in favor of the Rounds-Porter Lumber Company against J. W. Kennedy and plaintiff in error is reversed in so far as the same affects the plaintiff in error.

On November 4, 1920, the defendant J. W. Kennedy filed in this court what is denominated "a motion to substitute lost files," praying that he be granted leave to substitute his cross-petition in error herein which he claims had either been lost from the files or through unavoidable casualty, without his fault, had failed to be filed herein. It is alleged in the motion that it appears from the record in the case-made that the movant gave notice of his intention to appeal from and seek a modification of the final judgment of the court; that on the 23d day of April, 1918, M. V, Biddison, his attorney, sent to the clerk of this court a letter accompanied by the cross-petition in error requesting the clerk to file the same. The movant states that he is not able to say whether said clerk ever received the cross-petition in error or whether the same was ever filed but claims that the letter containing the same was duly deposited in the United States mails on the 23d day of April, 1918, at Tulsa, Okla., addressed to the clerk of this court. There is attached to the motion what purports to be a carbon copy of the original letter, transmitting the cross-petition in error, and also what purports to be a carbon copy of the original cross-petition in error. There is also attached to the motion the affidavit of Maribel Boyer, stenographer and notary public in the office of Mr. Biddison, wherein it is alleged she wrote the letter to the clerk of this court dated April 23, 1918, and she identifies the carbon copy. She further states that she wrote the cross-petition in error, and the carbon copy of the original was attached to the motion; that she enclosed the original cross-petition in error in an envelope and deposited the same in the United States mail at Tulsa, Okla., addressed to the clerk of this court, on the 23d day of April, 1918, with postage thereon prepaid.

There is a long line of decisions of this court holding that where more than six months has intervened between the rendition of the judgment or final order sought to be reviewed and the filing of a petition in error in the Supreme Court, this court is without jurisdiction to review the order complained of. Caswell v. Eaton, 43 Okla. 718, 144 Pac. 591; Boorigie Bros. v. Ranney-Davis Mercantile Company, 47 Okla. 97, 147 Pac. 774; Muskogee Electric Traction Company v. Howenstine, 40 Okla. 543, 138 Pac. 381; Malloy v. Johnson, 40 Okla. 454, 139 Pac. 310.

Depositing the cross-petition in error in the United States mails within the six months is not a compliance with the terms of the statute. Greening v. Maire Bros. Co., 79 Okla. 136.

In the case of Lamb v. Alexander et al., 45 Okla. 573, 146 Pac. 443, construing section 4986, Rev. Laws 1910, it was said:

"It is urged by the defendants in error that, under the provisions of this section, the petition in error must be lodged in this court within ten days from the date of the order complained of. We think this contention must be sustained. There are no decisions in this state construing this statute, but a similar statute has been construed by the Supreme Court of Indiana. In the case of Chicago Horseshoe Co. v. Gostlin et al., 30 Ind. App. 504, 66 N. E. 514, the court held that the appeal must be taken within ten days, else the action of the court could not be reviewed, because the appeal was not brought in time."

In the instant case, it does not appear that the cross-petition in error was ever received by the clerk of this court. If, however, the clerk had received the petition within the statutory time, and after the same had reached his office it had been lost or misplaced, and this had been made to appear, the defendant's motion would be sustained, for in that case he would have done all that the law required of him, and he should not be made to suffer by the failure of the clerk to place the filing mark thereon nor should he be held responsible for their loss.

The moiton to substitute is therefore denied.

HARRISON, V. C. J., and KANE, JOHNSON, HIGGINS, and BAILEY, JJ., concur; RAINEY, C. J., and COLLIER, J., not participating; McNEILL, J., disqualified.